UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAUB AND WILLIAMS, L.L.P., | Case No. 13 cv 1101 (GBD)(jcf) |
| Plaintiff, | ECF Case |
| - against - | **FIRST AMENDED COMPLAINT** |
| AUGME TECHNOLOGIES, INC., | |
| Defendant. | |

## THE PARTIES

1.      At the time of the filing of this action, Augme Technologies, Inc., formerly known as Modavox, Inc., ("AUGME" or "Defendant") is a corporation organized under the laws of Delaware, with its principal place of business and headquarters located in New York City, New York.  As a result of a merger, Modavox, Inc. changed its name to Augme Technologies, Inc. in February 2010.

2.      Shaub & Williams LLP ("SHAUB & WILLIAMS" or "Plaintiff") is a limited liability partnership organized under the laws of the State of California with its principal place of business in Los Angeles, California.  All of the partners of SHAUB & WILLIAMS, David R. Shaub, Lisbeth Bosshart Merrill and Leslie Williams, are residents of and domiciled in the State of California.

///

**NATURE OF THE ACTION**

3.     SHAUB & WILLIAMS hereby realleges paragraphs 1 through 2 as if fully set forth herein.

4.     This is an action in quantum meruit for the recovery of reasonable attorney fees and costs owed by AUGME to SHAUB & WILLIAMS for legal services performed over the course of almost four years.

**JURISDICTION AND VENUE**

5.     SHAUB & WILLIAMS hereby realleges paragraphs 1 through 4 as if fully set forth herein.

6.     Pursuant to 28 USC § 1332, this Court has jurisdiction over this action because the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

7.     Venue over the subject matter hereof is appropriate before this Court by the fact that this First Amended Complaint relates to the performance of legal services, the reasonable value of which is at issue, which performance took place primarily in New York and the United States District Court, Southern District of New York.

8.     Venue in this judicial district is further proper because the underlying litigation that was undertaken by SHAUB & WILLIAMS on behalf of AUGME, and which was the subject of the engagement agreement entered into between the Parties, was litigated in the Southern District of New York and thus this judicial district has an interest in the legal fees incurred in the litigation of such disputes within its district.

///

## STATEMENT OF FACTS

9.      SHAUB & WILLIAMS hereby realleges paragraphs 1 through 8 as if fully set forth herein.

10.     In March 2008, AUGME engaged SHAUB & WILLIAMS, together with patent attorney David Rosenbaum ("Rosenbaum"), to represent AUGME and to take over from another law firm an action it had already filed against Tacoda, Inc. in August 2007 in the United States District Court, Southern District of New York, Case No. 1:07-cv-07088-CM ("Tacoda" or "Tacoda Action") for infringement of two patents held by AUGME.  A true copy of the engagement agreement entered into between SHAUB & WILLIAMS and AUGME (formerly Modavox, Inc.) ("Engagement Agreement") is attached hereto as Exhibit 1.  The Engagement Agreement was thereafter amended twice.  True copies of these amendments to the Engagement Agreement are attached hereto as Exhibits 2 and 3.

11.     SHAUB & WILLIAMS was engaged to prosecute the Tacoda Action and explore settlement.  Rosenbaum was engaged to assist in the litigation.  After being engaged, SHAUB & WILLIAMS discovered that the Initial Disclosures required under Rule 26 had not been timely exchanged the previous year under the direction of the former discharged law firm, so SHAUB & WILLIAMS completed that task as well as obtaining a revision of the Court's scheduling order regarding deadlines.  SHAUB & WILLIAMS also performed extensive due diligence regarding the patent claims before proceeding to prosecute the Tacoda Action.

12.     After it became apparent that Tacoda was not interested in settlement, SHAUB & WILLIAMS began the discovery process and exchanges which involved

substantial discovery requests and responses considering the complex nature of the Tacoda Action and the highly technical aspects of the patents involved. At first, Tacoda refused to produce any discovery, claiming a violation of Rule 11 by AUGME's former counsel thereby forcing AUGME to obtain Court relief to compel discovery despite the Rule 11 violation allegations. What followed was a continuous series of lengthy written discovery disputes beginning in August and September 2008, which extended into early 2011, all of which involved meet and confers between counsel, letters to and hearings before the magistrate judge, multiple motions to compel and motions for sanctions because of spoliation of evidence after an extensive review and analysis with an expert of half a million lines of code and millions of pages of documents. Almost all discovery-related motions brought before the Court by SHAUB & WILLIAMS were successful.

13.     In September 2008, pursuant to the request of AUGME'S management and after conducting due diligence, SHAUB & WILLIAMS filed a trademark infringement action against AOL, LLC in the United States District Court, Central District of California, Case No. 08-cv-05914 (the "AOL Trademark Action"). In the latter part of 2009, evidence was discovered which SHAUB & WILLIAMS reviewed with AUGME and which led to the belief that AOL LLC, Time Warner, Inc., and Platform-A, Inc. were infringing the AUGME patents previously asserted against Tacoda. AOL's public records and discovery further showed that in July 2007, AOL/Time Warner had purchased Tacoda and subsequently was integrating Tacoda's technology into their Internet platform.

14.     AUGME requested SHAUB & WILLIAMS to bring an action for patent infringement against AOL, Time Warner and Platform-A, which SHAUB & WILLIAMS

4

did by amending the complaint in the AOL Trademark Action in January 2009 to add allegations of patent infringement in addition to the trademark claim and to also add the defendant Time Warner (the "AOL/Time Warner Action").

15.     Because of the pendency of the Tacoda Action in which AOL had a significant role because of its acquisition of Tacoda, AOL began a series of motions in March 2009 to transfer the AOL/Time Warner Action from California to New York and to consolidate the AOL/Time Warner Action with the Tacoda Action. While the AOL/Time Warner Action was transferred, the consolidation request was successfully opposed by SHAUB & WILLIAMS, and the AOL/Time Warner Action was assigned to a different judge in the United District Court, Southern District of New York, Case No. 1:09-cv-04299-RWS.

16.     AOL then filed further motions during the course of 2009, which were successfully opposed by SHAUB & WILLIAMS and instead resulted in a stay of the patent claims in the AOL/Time Warner Action and the continued litigation of the trademark claims against AOL which led to an attempted mediation of those claims.

17.     AUGME further requested that SHAUB & WILLIAMS bring another patent infringement action based upon the same two patents against Yahoo, Inc. Pursuant to that request, and after due diligence by SHAUB & WILLIAMS, it filed such action in April 2009 in the United States District Court, Northern District Court of California against Yahoo, Inc., Case No. 3:09-cv-05386-JCS (the "Yahoo Action").

18.     The Tacoda Action, AOL/Time Warner Action and Yahoo Action began to somewhat proceed in parallel including claims construction, chain of title analysis, infringement and invalidity analysis with engaged experts in the patent matters, and

disclosure exchanges, written discovery and multiple settlement and mediation meetings and conferences in the three matters. Although the patent claims in the AOL/Time Warner Action were stayed, the AUGME/AOL efforts to settle were global.

19.     Beginning in or around January 2010, deposition discovery proceeded in the Tacoda Action which included efforts to take the deposition and obtain records of AUGME's previous counsel in connection with AOL's contention that the previous counsel had violated Rule 11. SHAUB & WILLIAMS successfully asserted the attorney-client privilege in these proceedings. Later, SHAUB & WILLIAMS moved to compel the deposition of the President of AOL. The magistrate judge ruled the depositions of midlevel AOL executives should proceed first which they did in early 2011.

20.     As deposition discovery in the Tacoda Action was close to completion, based on evidence obtained during discovery regarding the purchase of Tacoda by AOL and the manner in which the integration of the Tacoda technology into AOL occurred, SHAUB & WILLIAMS successfully moved on behalf of AUGME to include AOL as defendant in the Tacoda Action on the theory of alter ego.

21.     During the course of the engagement of SHAUB & WILLIAMS in all the aforementioned matters, AUGME's management communicated with SHAUB & WILLIAMS on a frequent, and sometimes daily basis, providing SHAUB & WILLIAMS with tasks and directions which were pursued where appropriate.

22.     The tasks undertaken by SHAUB & WILLIAMS, including those mentioned above, were extremely complex and highly technical and thus required many hours of attorney time and expert analysis to ensure a dutiful and complete case preparation. In particular, the claims construction process and later review of technical

documents, software code and analytic maps, involved months of analysis and study by SHAUB & WILLIAMS attorneys, often in conferral with experts and Rosenbaum. The costs of litigation were further increased significantly by various unanticipated issues. AUGME's previous counsel was accused by AOL as having failed to exercise due diligence. Multiple changes occurred in the management of AUGME, consisting of three different CEOs, the additions and departures of AUGME's in-house counsel, various support officers, and several members of the board of directors. Key investors and members of the board of directors, from time to time, provided their input and their opinion of how the case should be handled. These opinions were conveyed to SHAUB & WILLIAMS. Further, the reverse merger in which Modavox became Augme Technologies created issues to be resolved. These changes all required new explanations and reports regarding the litigation, in addition to the demands of the client and attention they sought regarding the litigation and updates, as well as the plethora of discovery issues mentioned above resulting from the questionable Rule 11 tactics of the defendants.

23. Before SHAUB & WILLIAMS withdrew as counsel, a settlement conference was conducted in New York in the Tacoda and AOL/Time Warner Actions. Further, in the Yahoo Action, after completing the initial infringement contentions and mediation, SHAUB & WILLIAMS successfully defeated a motion for summary judgment brought by Yahoo.

24. Shortly before February 2, 2011, SHAUB & WILLIAMS was notified that new counsel, Goodwin Proctor, was engaged by AUGME so that it would have a national firm taking over the litigation as lead counsel. However, it was represented by Augme management to SHAUB & WILLIAMS that it would still be assisting in the litigation.

As part of that assistance, SHAUB & WILLIAMS provided electronically as quickly as possible over a period of about a month over a gigabyte of documents in electronic form broken down into topical categories using an electronic link system designated by Goodwin Proctor. These transfer efforts were coordinated with Goodwin Proctor on a daily basis and completed by April 2011.

25.     By March 2011, SHAUB & WILLIAMS was owed a substantial amount of fees that were payable in accordance with its billings. Multiple unsuccessful requests for payment were made to AUGME. Furthermore, beginning in April 2011, SHAUB & WILLIAMS's efforts to continue its requested coordination of efforts with Goodwin Proctor, and to assist with the litigation going forward, were rejected by Goodwin Proctor and AUGME. After this point, SHAUB & WILLIAMS was no longer permitted to provide any input into the course of the litigation. Instead, it was basically shut out of the case and was not provided updates regarding the litigation, including being provided with the contents of a number of filings under seal.

26.     SHAUB & WILLIAMS had agreed in the Engagement Agreement to defer a portion of its billings in the Tacoda Action and even deferred portions of its AOL/Time Warner and Yahoo Action billings, in anticipation of AUGME's providing a success fee. However, AUGME repeatedly failed to uphold its agreement to make payments in accordance with the non-deferred billings and also rejected SHAUB & WILLIAMS' rights to warrants as a success fee for the deferral of fees. Further, AUGME stated that SHAUB & WILLIAMS did not have any rights to the warrants tied to a successful conclusion of the Tacoda Action, as set forth in the Engagement Agreement, basing its reasoning that SHAUB & WILLIAMS no longer could influence a

8

successful conclusion of the Tacoda Action and that the AUGME board had never approved any warrants to be issued to SHAUB & WILLIAMS, particularly with respect to matters other than the Tacoda Action.

27.     SHAUB & WILLIAMS attempted to engage in a series of negotiations over the outstanding fees, but the dispute remained unresolved. During these negotiations, AUGME asserted for the first time in April 2011 that SHAUB & WILLIAMS had been terminated, whereas SHAUB & WILLIAMS took the position it was entitled to withdraw from the cases due to its failure to make timely payments.

28.     In April 2011, SHAUB & WILLIAMS attorneys moved for orders of withdrawal from the Tacoda Action, AOL/Time Warner Action and Yahoo Action, all of which were granted.

29.     On October 12, 2012, SHAUB & WILLIAMS sent a demand letter and a notice of right to arbitrate under Sections 6200-6206 of the California Business and Professions Code to Robert Hussey, then CEO of AUGME. A true copy of the letter and notice is attached hereto as Exhibit 4. As of the date of filing this First Amended Complaint, no response has been received from AUGME.

### FIRST CAUSE OF ACTION
### (QUANTUM MERUIT)

30.     Plaintiff hereby realleges paragraphs 1 through 29 as if fully set forth herein.

31.     Defendant AUGME is liable to Plaintiff in quantum meruit for the reasonable value of legal services rendered by SHAUB & WILLIAMS in an amount not

less than $2,249,686.25 based on the billings of SHAUB & WILLIAMS, consisting of, among other things, the reasonable hourly fees, both presently due and previously deferred, owed to Plaintiff by Defendant pursuant to the Engagement Agreement executed by AUGME and SHAUB & WILLIAMS.

32.     WHEREFORE, Plaintiff, SHAUB & WILLIAMS, demands judgment against Defendant, AUGME, as follows:

a.     On the First Cause of Action against Defendant AUGME in an amount to be determined, but in the approximate amount of $2,249,686.25 together with pre-judgment interest and the costs of this action; and

b.     For such other relief as the Court deems just and appropriate.


Dated: March 18, 2013                          SHAUB & WILLIAMS, LLP

By: _____
Lisbeth Bosshart Merrill, Esq.
Attorneys for the Plaintiff
Shaub & Williams, LLP
12121 Wilshire Blvd., #205
Los Angeles, CA 90025

# EXHIBIT
# 1

**DAVID R. SHAUB**
**LESLIE G. WILLIAMS**
**LISBETH BOSSHART**

**STEPHEN D. MORGAN**

ATTORNEYS AT LAW

12121 WILSHIRE BOULEVARD, SUITE 205
LOS ANGELES CALIFORNIA, 90025
TELEPHONE: (310) 826 - 6678
FACSIMILE: (310) 826 - 8042
E-MAIL : LAWFIRM@SW-LAW.COM

OF COUNSEL
EDWARD EVERETT VAILL
DONALD G. DAVIS
ALICE A. SUN
JENNIFER McCALLUM*
*PATENT ATTORNEY ADMITTED IN COLORADO

David R. Shaub
Shaub & Williams LLP
E-mail : dave@sw-law.com
Tel: (310) 826-6678

David G. Rosenbaum
Rosenbaum & Associates, P.C.
E-mail: drosenbaum@biopatentlaw.com
Direct Tel: (847) 770-6010

March 25, 2008

David J. Ide, CEO
Modavox, Inc.
4636 E University Drive, Ste 275
Phoenix, Az 80354

Re:    Modavox, Inc. v Tacoda, Inc.

Dear David,

This confirms you have agreed to engage Shaub & Williams, LLP (S&W Firm) and Rosenbaum Associates, P.C (R&A Firm) to represent Modavox in the above litigation to conclusion. The objective of representation is to implement a litigation strategy directed toward achieving a settlement rather than going to trial that will enhance the value of your company. At the same time we intend to perform all the litigation tasks we are obligated to perform in pursuing the litigation, including, if necessary, going to trial.

If you request that we provide legal services in other matters, the provision of those services also will be governed by this Agreement at our full hourly rates unless otherwise agreed.

As we have proposed to you, our compensation will consist of the following:

1. 50% of billed fees, plus all costs. The fees would be at the hourly rates listed below. We will use a local firm in New York that has knowledge of local procedure. However, Ms. Bosshart is admitted to practice in New York.

2. The balance of 50% of the fees are to be paid out of cash received from any settlement of the pending action.

3. Additionally, for the risk taken, we will receive warrants exercisable at the average current market price of Modavox shares for the three days before and after execution of this engagement letter (approximately $1.50/share). The number of shares obtainable by exercise of the warrants will be shares having a value equivalent to $2 million which totals approximately 1.33 million

shares based upon the foregoing price.

Modavox will also wire us a retainer of $25,000 for fees and $5,000 for costs upon execution of this engagement letter. It is understood that this retainer may be allocated between the S&W Firm and the R&A Firm.

The warrants shall be issued jointly in the names of the S&W Firm and the R&A Firm but held by you or your transfer agent until our efforts have resulted in a licensing agreement of Modavox' intellectual property and/or payments in settlement of the above action or judgement being rendered in favor of Modavox or other disposition acceptable to Modavox.

The number of warrants to be released to us upon realizing the above objective shall be equivalent to twice the total fees billed by us in shares at the original valuation (e.g. approximately $1.50/share) but not to exceed $2 million in shares at that valuation. Modavox will register the 1.33 million shares fully obtainable from the exercise of the warrants and pay for such registration from any settlement in the above action or will use its best efforts to piggyback their registration within one year from the execution of this engagement letter.

Modavox also agrees to cause an opinion letter to be issued to its transfer agent that the shares, if not previously registered, shall be freely tradable upon the expiration of the minimum holding period governed by Rule 144.

All other work will be performed on an hourly or fixed fee basis. At present the hourly rate ranges are as follows:

| | |
|---|---|
| Partners: | $350.00 to $400.00 |
| Of Counsel: | $315.00 to $385.00 |
| Associates: | $225.00 to $295.00 |
| Clerks/Paralegals: | $ 75.00 to $175.00 |

Certain costs, such as long distance telephone charges, courier services, copying charges, travel expenses and computer research services incurred on your behalf are billed as disbursements. Those charges are billed at the time of invoicing our charges for legal services, and they reflect an administrative add-on cost for the maintenance of the personnel and equipment involved in the providing of the services. In certain instances, where there are out-of-pocket payments, court costs,, expert consultants, expert witnesses or litigation support services, such as court reporters, such fees may be charged directly to you by the supplier, with your prior approval.

Our statements for services and reimbursements for disbursements advanced by either Firm are rendered monthly. The statements are due and payable upon receipt. It is the policy of the firms that non-payment of our invoices after a reasonable time, normally 30 days, is cause for us to terminate the attorney-client relationship and perform no further work on any matters that you have entrusted to us. Your countersignature to this letter acknowledges this policy and you agree to our withdrawal from further representation of you if the payment terms are not met.

In engaging our services you nonetheless agree that our firm reserves the right to continue representing existing clients or to undertake to represent new clients in any matter that is not adverse to the particular matters for which you are retaining our services, even if the interests of such clients in those other matters are directly adverse to your interests. This prospective consent to conflicting representation shall not apply in any instance where, as the result of our representation of you we

have obtained sensitive proprietary or otherwise confidential information that, if known to such other client of ours, could be used to your material disadvantage in a matter adverse to you. While we do not have any expectation of such occurrences arising, it is necessary that you understand that this situation is a possibility.

As lawyers, the S&W Firm is governed by the Rules of Professional Conduct of the California State Bar and the R&A Firm is governed by the Rules of Professional Responsibility of both the Supreme Court of the State of Illinois and the United States Patent and Trademark Office.

Each patent attorney and patent agent employed by Rosenbaum & Associates, P.C., and each attorney employed by S&W LLP as well as persons acting under their direction are under the same legal obligation of confidentiality imposed by state law and United States Federal law.

As to all matters arising under the Rules, except the matter of fees, our determination in respect of the firm ethical responsibilities is controlling. If any dispute arises as to the reasonableness of either firm's fees, or its performance of services, we agree to have the dispute submitted for non-binding resolution under the California State Bar provisions concerning arbitration of client disputes set forth in California Business and Professions Code section 6200, et seq. We believe that arbitration provides clients with an efficient, fair and inexpensive method for resolving such disputes.

There may be other attorneys involved in your matter and other patent associates who are assigned certain tasks in the providing your legal representation. All of these attorneys are duty bound to your interests, as are we. While the efforts of our attorneys will not be duplicative, each will be familiar with the matters for you that are being worked on in the event that you need to obtain information and one or the other of us is not available at a particular time.

On behalf of Modavox you hereby grant to either the S&W Firm and/or the R&A Firm, depending upon the firm rendering the service and issuing the billing statement, a lien on any and all of Modavox claims, intellectual property rights or causes of action that are the subject of any representation under this Engagement Agreement, and on any monies arising out of Client claims or causes of action, and on funds collected in any way from any source for any sums due and owing to Attorney at the conclusion of services performed.

The lien will attach to any recovery Modavox may obtain, whether by arbitration award, judgment, settlement or otherwise. Both the S&W Firm and/or the R&W Firm are authorized and may deposit to their respective client trust account any monies, checks, transfers or drafts received in payment on Modavox claims and may deduct outstanding fees, costs and expenses from any such monies received on Modavox behalf.

You agree to furnish any and all information and documents in Modavox possession, custody or control relating to the matters for which the legal services are requested, to be truthful with each firm, to fully cooperate with each firm, to keep each firm informed of developments, to abide by this Agreement, to pay all bills on time, to keep each firm advised of Client address, telephone number and whereabouts, and further grants each Firm, Modavox' Power of Attorney to sign where appropriate any documents connected with matters for which each firm represents Modavox.

You expressly acknowledge that the S&W Firm and the R&A Firm, and their agents and employees have made no promises, guarantees or representations as to any results arising from or in connection with the matters which are the subject of the representation. Neither the S&W Firm nor the R&A Firm make any such promises, guarantees or representations. Any comments that may be made concerning the outcome of the matter(s) are expressions of opinion only based on actual information in our possession at the time.

You also acknowledge that any fees or costs estimates provided before or during the term of the engagement, are or will be our best estimates at the time given and based on actual information in our possession at the time. Accordingly, the final amount of Attorney's billing statements could be more, sometimes substantially, or could be less than any such estimates. In litigation matters it is almost impossible to accurately predict projected fees and costs due to the many variables in litigation, including but not limited to factors beyond our control. Similarly, in intellectual property matters other than litigation, if we are so engaged, it is difficult to predict projected fees and costs for the prosecution of applications due to responses from government agencies or third parties. In transactional matters, it is difficult to predict the conduct of other parties to the transaction or proposed transaction or the conduct of their attorneys. Matters over which we have no control can substantially increase fees, costs and expenses.

Notwithstanding this letter, anytime you have any questions about our billing procedures or about a specific statement, you should contact one of us so that we can be responsive to your questions. Please sign and return the enclosed copy of this letter to each of us, acknowledging that our fee structure, the responsibilities of impartiality that are required of us in representing both parties to the agreement and our obligations to our existing and future clients as it applies to the matters for which you have retained us are understood.

We appreciate being selected as your attorneys and look forward to working together with you.

Very truly yours,

David R. Shaub
For Shaub & Williams LLP

David G. Rosenbaum
For Rosenbaum & Associates, P.C.

**READ, UNDERSTOOD AND AGREED TO:**

April 9, 2008
Dated: _____

By Modavox

_____
David J. Ide, CEO

matters which are the subject of the representation. Neither the S&W Firm nor the R&A Firm make any such promises, guarantees or representations. Any comments that may be made concerning the outcome of the matter(s) are expressions of opinion only based on actual information in our possession at the time.

You also acknowledge that any fees or costs estimates provided before or during the term of the engagement, are or will be our best estimates at the time given and based on actual information in our possession at the time. Accordingly, the final amount of Attorney's billing statements could be more, sometimes substantially, or could be less than any such estimates. In litigation matters it is almost impossible to accurately predict projected fees and costs due to the many variables in litigation, including but not limited to factors beyond our control. Similarly, in intellectual property matters other than litigation, if we are so engaged, it is difficult to predict projected fees and costs for the prosecution of applications due to responses from government agencies or third parties. In transactional matters, it is difficult to predict the conduct of other parties to the transaction or proposed transaction or the conduct of their attorneys. Matters over which we have no control can substantially increase fees, costs and expenses.

Notwithstanding this letter, anytime you have any questions about our billing procedures or about a specific statement, you should contact one of us so that we can be responsive to your questions. Please sign and return the enclosed copy of this letter to each of us, acknowledging that our fee structure, the responsibilities of impartiality that are required of us in representing both parties to the agreement and our obligations to our existing and future clients as it applies to the matters for which you have retained us are understood.

We appreciate being selected as your attorneys and look forward to working together with you.

Very truly yours,

David R. Shaub
For Shaub & Williams LLP

David G.
Rosenbaum

Digitally signed by David G. Rosenbaum
DN: cn=David G. Rosenbaum, o=Rosenbaum & Associates, P.C., ou,
email=drosenbaum@blspatentlaw.com, c=US
Date: 2008.03.31 14:32:42 -05'00'

David G. Rosenbaum
For Rosenbaum & Associates, P.C.

READ, UNDERSTOOD AND AGREED TO:

Dated: _____          By Modavox

_____
David J. Ide, CEO

# EXHIBIT
## 2

## SHAUB & WILLIAMS LLP

### ATTORNEYS AT LAW

12121 WILSHIRE BOULEVARD, SUITE 205
LOS ANGELES CALIFORNIA, 90025
TELEPHONE: (310) 826 - 6678
FACSIMILE: (310) 826 - 8042
E-MAIL : LAWFIRM@SW-LAW.COM

OF COUNSEL
EDWARD EVERETT VAILL
DONALD G. DAVIS
ALICE A. SUN
JENNIFER MCCALLUM*
* PATENT ATTORNEY ADMITTED IN COLORADO
DAVID ROSENBAUM**
** PATENT ATTORNEY ADMITTED IN ILLINOIS

March 11, 2009

David J. Ide, CEO
Modavox, Inc.
1900 W University Drive, Suite 230
Tempe, AZ 85281

Re: Amendment to Attorney - Client Hourly Fee Agreement

Dear Mr. Ide:

### INTRODUCTION

On April 9, 2008, Modavox, Inc. (the "Company") entered into an Attorney – Client Fee Agreement (the "Agreement") with Shaub & Williams (S&W) and Rosenbaum & Associates (R&A) pursuant to which the firms agreed to provide legal services to the Company commencing as of the date of the Agreement.

### COMPENSATION

It is our understanding that the Company wishes to pay for some of the services rendered under the Agreement with shares of the Company's common stock with registration rights on Form S-8. Therefore, this Amendment shall amend our Agreement to provide for the registration on Form S-8 of shares of common stock of the Company issuable to David R. Shaub, a principal of Shaub & Williams, as full and final consideration & payment to S&W and R&A under the same hourly terms as contained in the Agreement. Except as modified our original Agreement remains in force.

In connection with the Agreement, the Company has agreed to register on Form S-8 initially 166,667 shares of common stock of the Company issued to David R. Shaub over the term of the Agreement and which are not being administered by either the Board of Directors of the Company or any committee of the Board of Directors organized for that purpose. The

Company agrees to compensate S&W and R&A for services rendered pursuant to the Agreement in accordance with the following terms:

The hourly billing rates described in the Agreement payable in the form of shares of common stock at the market rate per share on the day traded by us less commissions ("Compensation Shares"). All Compensation Shares shall have no lock-up period and Mr. Shaub shall have the right on behalf of S&W and R&A to trade such Compensation Shares on the public securities markets upon the earlier to occur of: (i) the effectiveness of the Registration Statement on Form S-8; or (ii) the expiration of the holding period required by Rule 144 of the Securities Act of 1933.

Attorneys acknowledge the provisions of the securities laws which preclude trading on inside information, including specifically Section 10b and Rule 10b(5) under the Securities and Exchange Act of 1934, and agree to abide by all such laws. Attorneys agree to hold unsold shares in trust until such time as a bill is either outstanding or current costs are incurred or fees earned. Attorneys reserve the right to require, and anticipate the need for, deposits or advances for fees, costs and expenses as they are or will be incurred or paid once all Compensation Shares of Modavox, Inc. issued to them are sold or can no longer be sold on the open market.

Notwithstanding the payment of any retainer now or hereafter made by Client, Client agrees to pay Attorneys' billing statements in full in accordance with the terms of this Agreement so that all retainers, advances or deposits are replenished from time to time. Any balance of any retainer, advance or deposit after Attorneys' final billing will be refunded or paid to Client.

Attorney will incur various costs and expenses in performing legal services under this Agreement. Client agrees to pay for all such costs and expenses. Attorneys agree to seek payment of such costs from the Compensation Shares as long as such shares have not already been sold to cover earlier fees and/or costs and as long as such shares can be sold on the open market.

## ETHICAL CONSIDERATIONS

Rule 3-300 of the California Rules of Professional Conduct applies to situations, like the one at hand, in which an attorney acquires an ownership interest in a client. The rule requires that the terms of the transaction be fair and reasonable to the client, be fully disclosed and transmitted in writing to the client, and be understood by the client. It also requires that the client be advised that it may seek the advice of an independent lawyer of the client's choice and be given a reasonable opportunity to seek that advice. Finally, it requires that the client consent to the transaction in writing. Rule 3-300 of the California Rules of Professional Conduct is attached to this Amendment as Appendix A.

One of the purposes of this Amendment, therefore, is to comply with the requirements of Rule 3-300. Accordingly, before signing this Amendment, please review it carefully to make

sure you fully understand its terms and are confident that those terms are fair and reasonable. We suggest that the Company consult with independent counsel to assist the Company in determining whether to accept the terms of the purchase of the securities. The Company hereby acknowledges that it has been afforded a reasonable opportunity to consult with independent counsel regarding this transaction.

David R. Shaub, a partner of S&W, will be acquiring shares of the Company's common stock (the "Shares"). By its execution below, the Company hereby acknowledges the foregoing economic interests and confirms its consent to acquisition of the Shares by David R. Shaub.

As we have previously advised you, the ownership interests in the Company to be held by David R. Shaub create certain potential conflicts of interest. Specifically, our interests as shareholders of the Company might be perceived as affecting our ability to give impartial, disinterested legal advice. For example, our advice regarding a given matter might be perceived as being colored by our determination of the likely upside to equity and attendant risks. While we would not accept ownership interests in the Company if we felt that, by doing so, we could not continue to adequately represent the Company's interests, it is possible that our economic interest in the Company will leave you uncomfortable with our representation, possibly at an inopportune time. Moreover, we may reach the conclusion that the existence of our economic interest makes it inappropriate to advise the Company with respect to issues that might arise, thus requiring it to retain different counsel, possibly at an inopportune moment, to advise it on such matters. So that we may continue to represent you, we are also asking the Company by your signature below to waive any conflict that has arisen in the past or that might arise hereafter by virtue of the status of David R. Shaub as the holder of the Shares.

If, after careful consideration, you determine that this letter accurately reflects your understanding of our agreement, please acknowledge your approval and acceptance of these terms by signing and returning the enclosed copy of this letter.

Very truly yours,

SHAUB & WILLIAMS LLP

By:

Partner of Shaub & Williams LLP

THE UNDERSIGNED HEREBY AGREES THAT THE TERMS AND CONDITIONS SET FORTH IN THIS LETTER SHALL APPLY AS PROVIDED HEREIN TO THE PURCHASE, HOLDING AND DISPOSITION OF THE SHARES BY DAVID R. SHAUB, CONSENTS TO THE ACQUISITION OF THE SHARES, AND WAIVES ANY CONFLICT OF INTEREST THAT HAS ARISEN IN THE PAST OR THAT MIGHT ARISE HEREAFTER BY VIRTUE

OF THE REPRESENTATION OF THE COMPANY BY THE LAW FIRM WHILE THE LAW FIRM OR ITS PARTNERS HOLD ANY OWNERSHIP INTEREST IN THE COMPANY.

BY SIGNING THIS AMENDMENT, AND AS FURTHER SET FORTH IN THE AGREEMENT, THE PARTIES AGREE TO BINDING ARBITRATION OF DISPUTES, WHETHER AS TO FEES, QUALITY OF SERVICES RENDERED, THE ARBITRABILITY OF THE DISPUTE, ANY MATTER RELATING TO THE SHARES, OR OTHERWISE, AND GIVE UP THEIR RESPECTIVE RIGHTS TO A JURY OR COURT TRIAL, AND WAIVE THEIR RESPECTIVE RIGHTS TO PROCEED UNDER THE ARBITRATION PROVISIONS OF THE STATE BAR ACT, CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 6200, ET SEQ.  THE CMPANY ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY THE LAW FIRM, AND HAS BEEN AFFORDED THE REASONABLE OPPORTUNITY, TO HAVE THIS TRANSACTION AND THIS AMENDMENT REVIEWED BEFORE EXECUTION BY INDEPENDENT COUNSEL ACTING ON ITS BEHALF.

     MODAVOX, INC.

By: _____

_____
David Ide
CEO of Modavox, Inc.

# APPENDIX A

California Rules of Professional Conduct

--------------------------------------------------

## RULE 3-300. AVOIDING INTERESTS ADVERSE TO A CLIENT

A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:

(A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and

(B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and

(C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition.

# EXHIBIT
# 3

DAVID R. SHAUB
LESLIE G. WILLIAMS
LISBETH BOSSHART

STEPHEN D. MORGAN
DIANA OLYAI

# SHAUB & WILLIAMS LLP

### ATTORNEYS AT LAW

12121 WILSHIRE BOULEVARD, SUITE 205
LOS ANGELES CALIFORNIA, 90025
TELEPHONE: (310) 826 - 6678
FACSIMILE: (310) 826 - 8042
E-MAIL: LAWFIRM@SW-LAW.COM

OF COUNSEL
EDWARD EVERETT VAILL
DONALD G. DAVIS
ALICE A. SUN
JENNIFER MCCALLUM*
* PATENT ATTORNEY ADMITTED IN
COLORADO
DAVID ROSENBAUM**
** PATENT ATTORNEY ADMITTED IN ILLINOIS

December 7, 2009

Mark Severini, CEO
Modavox, Inc.
135 West 20th Street
5th Floor
New York, NY 10011

Re: Amendment to Attorney-Client Hourly Fee Agreement

Dear Mr. Severini:

## INTRODUCTION

On April 9, 2008, Modavox, Inc. (the "Company") entered into an Attorney–Client Fee Agreement (the "Agreement") with Shaub & Williams (S&W) and Rosenbaum & Associates (R&A) (S&W and R&A collectively, "Attorneys") pursuant to which the firms agreed to provide legal services to the Company commencing as of the date of the Agreement.

## COMPENSATION

It is our understanding that the Company wishes to pay for some of the services rendered under the Agreement using shares of the Company's common stock with registration rights on Form S-8. Therefore, this Amendment shall amend our Agreement to provide for the registration on Form S-8 of shares of common stock of the Company issuable to David R. Shaub, a principal of Shaub & Williams. As described below, such shares will be sold by Mr. Shaub and the proceeds of which will be used to pay S&W and R&A invoices per the same hourly terms as contained in the Agreement. Except as modified herein the original Agreement remains in force.

In connection with the Agreement, the Company has agreed to register on Form S-8 541,771 shares of common stock of the Company issued to David R. Shaub, which number of

shares is based upon assumptions as to anticipated fees and expenses to be incurred and invoiced by S&W and R&A through June, 2010, and with the number of shares to be issued based upon the average closing price of Modavox stock for the 30-day period preceding the date of this Amendment ($2.23 per share). Following the S8 Registration, the Company agrees to compensate S&W and R&A for services rendered pursuant to the Agreement in accordance with the following terms:

- o Attorneys' billed services, expert costs and out-of-pocket expenses will be invoiced monthly and payable from proceeds (after trading commissions) generated from the sale of Modavox common stock registered under the above referenced Form S-8 Registration and issued to David R. Shaub pursuant to this Amendment, as described herein ("Compensation Shares").

- o Subject to the "Insider Trading Restrictions" described below, all Compensation Shares shall have no lock-up period and Mr. Shaub shall have the right on behalf of S&W and R&A to trade such Compensation Shares on the public securities markets upon the earlier to occur of: (i) the effectiveness of the Registration Statement on Form S-8; or (ii) the expiration of the holding period required by Rule 144 of the Securities Act of 1933 and until all such shares issued are sold.

- o Our current hourly rates are as follows:

| | |
|---|---|
| Partners: | $400-$450 |
| Associates: | $200-290 |
| Clerks/Paralegals: | $150-185 |

These rates are subject to change periodically based upon prevailing market conditions.

All other compensation for each matter that we have been or may be requested to handle for the Company shall be payable as to each matter in accordance with the terms of the Agreement.

Attorneys acknowledge the provisions of the securities laws which preclude trading on inside information, including specifically Section 10b and Rule 10b(5) under the Securities and Exchange Act of 1934, and agree to abide by all such laws. In furtherance of this objective, Attorneys agree that Compensation Shares will be sold for the purpose of paying Attorney invoices as described above pursuant to a properly established SEC Rule 10b(5)-1 Stock Selling Plan ("10b(5)-1 Plan"), which 10b(5)-1 Plan will be established with and managed by Fidelity. As required by such 10b(5)-1 Plan, the trading schedule described therein, and any amendment thereto (collectively with the Company's "Insider Trading Policy," a copy of which has been provided to Attorneys, the "Insider Trading Restrictions"), must be approved by Modavox in writing. Attorneys agree to hold unsold shares in trust until such time as a bill is either outstanding or current costs are incurred or fees earned. Attorneys reserve the right to require,

and anticipate the need for, deposits or advances for fees, costs and expenses as they are or will be incurred or paid once all Compensation Shares of Modavox, Inc. issued to them are sold or can no longer be sold on the open market.

Notwithstanding the payment of any retainer now or hereafter made by Company, Company agrees to pay Attorneys' billing statements in full in accordance with the terms of this Agreement so that all retainers, advances or deposits are replenished from time to time. Any balance of any retainer, advance or deposit after Attorneys' final billing will be refunded or paid to Company.

Attorneys will incur various costs and expenses in performing legal services under this Agreement. Company agrees to pay for all such costs and expenses. Attorneys agree to seek payment of such costs from the Compensation Shares as long as such shares have not already been sold to cover earlier fees and/or costs and as long as such shares can be sold on the open market.

## ETHICAL CONSIDERATIONS

Rule 3-300 of the California Rules of Professional Conduct applies to situations, like the one at hand, in which an attorney acquires an ownership interest in a client. The rule requires that the terms of the transaction be fair and reasonable to the client, be fully disclosed and transmitted in writing to the client, and be understood by the client. It also requires that the client be advised that it may seek the advice of an independent lawyer of the client's choice and be given a reasonable opportunity to seek that advice. Finally, it requires that the client consent to the transaction in writing. Rule 3-300 of the California Rules of Professional Conduct is attached to this Amendment as Appendix A.

One of the purposes of this Amendment, therefore, is to comply with the requirements of Rule 3-300. Accordingly, before signing this Amendment, please review it carefully to make sure you fully understand its terms and are confident that those terms are fair and reasonable. We suggest that the Company consult with independent counsel to assist the Company in determining whether to accept the terms of the purchase of the securities. The Company hereby acknowledges that it has been afforded a reasonable opportunity to consult with independent counsel regarding this transaction.

David R. Shaub, a partner of S&W, will be acquiring the Compensation Shares for the purpose described herein. By its execution below, the Company hereby acknowledges the foregoing economic interests and confirms its consent to acquisition of the Compensation Shares by David R. Shaub.

As we have previously advised you, the ownership interests in the Company to be held by David R. Shaub create certain potential conflicts of interest. Specifically, our interests as shareholders of the Company might be perceived as affecting our ability to give impartial, disinterested legal advice. For example, our advice regarding a given matter might be perceived

as being colored by our determination of the likely upside to equity and attendant risks. While we would not accept ownership interests in the Company if we felt that, by doing so, we could not continue to adequately represent the Company's interests, it is possible that our economic interest in the Company will leave you uncomfortable with our representation, possibly at an inopportune time. Moreover, we may reach the conclusion that the existence of our economic interest makes it inappropriate to advise the Company with respect to issues that might arise, thus requiring it to retain different counsel, possibly at an inopportune moment, to advise it on such matters. So that we may continue to represent you, we are also asking the Company by your signature below to waive any conflict that has arisen in the past or that might arise hereafter by virtue of the status of David R. Shaub as the holder of the Compensation Shares.

If, after careful consideration, you determine that this letter accurately reflects your understanding of our agreement, please acknowledge your approval and acceptance of these terms by signing and returning the enclosed copy of this letter.

Very truly yours,

SHAUB & WILLIAMS LLP

By: _____
      Partner of Shaub & Williams LLP

THE UNDERSIGNED HEREBY AGREES THAT THE TERMS AND CONDITIONS SET FORTH IN THIS LETTER SHALL APPLY AS PROVIDED HEREIN TO THE PURCHASE, HOLDING AND DISPOSITION OF THE COMPENSATION SHARES BY DAVID R. SHAUB, CONSENTS TO THE ACQUISITION OF THE COMPENSATION SHARES, AND WAIVES ANY CONFLICT OF INTEREST THAT HAS ARISEN IN THE PAST OR THAT MIGHT ARISE HEREAFTER BY VIRTUE OF THE REPRESENTATION OF THE COMPANY BY THE LAW FIRM WHILE THE LAW FIRM OR ITS PARTNERS HOLD ANY OWNERSHIP INTEREST IN THE COMPANY.

BY SIGNING THIS AMENDMENT, AND AS FURTHER SET FORTH IN THE AGREEMENT, THE PARTIES AGREE TO BINDING ARBITRATION OF DISPUTES, WHETHER AS TO FEES, QUALITY OF SERVICES RENDERED, THE ARBITRABILITY OF THE DISPUTE, ANY MATTER RELATING TO THE COMPENSATION SHARES, OR OTHERWISE, AND GIVE UP THEIR RESPECTIVE RIGHTS TO A JURY OR COURT TRIAL, AND WAIVE THEIR RESPECTIVE RIGHTS TO PROCEED UNDER THE ARBITRATION PROVISIONS OF THE STATE BAR ACT, CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 6200, ET SEQ. THE COMPANY ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY THE LAW FIRM, AND HAS BEEN AFFORDED THE REASONABLE OPPORTUNITY, TO HAVE THIS TRANSACTION AND THIS AMENDMENT REVIEWED BEFORE EXECUTION BY INDEPENDENT COUNSEL ACTING ON ITS BEHALF.

MODAVOX, INC.

By:  _____
     Mark Severini
     CEO of Modavox, Inc.

California Rules of Professional Conduct

--------------------------------------------------

RULE 3-300. AVOIDING INTERESTS ADVERSE TO A CLIENT

A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:

(A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and

(B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and

(C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition.

# EXHIBIT
# 4

# SHAUB & WILLIAMS LLP

DAVID R. SHAUB
LESLIE G. WILLIAMS
LISBETH BOSSHART MERRILL

CASSANDRA M. LAMB
KATYA MEZEK
REBECCA HAAKE*

*ATTORNEY ADMITTED IN NEW YORK

ATTORNEYS AT LAW

12121 WILSHIRE BOULEVARD, SUITE 205
LOS ANGELES, CA 90025

TELEPHONE: (310)826-6678
FACSIMILE: (310) 826-8042
E-MAIL: LAWFIRM@SW-LAW.COM

OF COUNSEL
DONALD G. DAVIS
ALICE A. SUN
ROBERT C. MATZ
JENNIFER M. McCALLUM*

*PATENT ATTORNEY ADMITTED IN COLORADO
DAVID ROSENBAUM**

**PATENT ATTORNEY ADMITTED IN ILLINOIS

**VIA OVERNIGHT MAIL**

October 12, 2012

Robert Hussey
Chief Executive Officer
Augme Technologies, Inc.
350 7th Avenue, 2nd Floor
New York, NY 10001

RE: Unresolved Dispute Between Augme Technologies, Inc. and Shaub & Williams LLP

Dear Mr. Hussey,

In 2008, our firm, Shaub & Williams LLP, took over the lawsuit filed by Fox Rothschild against Tacoda, Inc. just prior to the purchase of Tacoda by AOL/Time Warner and began its representation of Augme, then Modavox, Inc. On behalf of the Company, we filed additional cases against AOL directly and Yahoo. During that time, your Company grew from an entity struggling to establish itself and make ends meet, including with regard to our fees, after which in approximately Spring of 2011, it again changed attorneys to Goodwin Proctor LLP leaving unpaid a large amount of the legal fees due to our firm.

The initial fee agreement of March 25, 2008 as amended on December 7, 2009 ("Fee Agreement") related to the Tacoda matter and provided for payment of 50% of our fees as incurred ("Fees") and 50% of those fees to be paid upon a successful resolution of the case ("Deferred Fees"). However, when Augme changed law firms, it completely shut us out and refused to allow us to assist, make recommendations, or otherwise participate in the outcome of the case. By taking away all influence Shaub & Williams LLP had in assisting Augme to reach a successful conclusion of the Tacoda case, it obstructed the spirit of the Fee Agreement leaving Shaub & Williams to pursue payment for the reasonable value of its services, including the Deferred Fees for the Tacoda, matter totaling $1,181,973.63.

There was no additional fee agreement entered into with respect to the AOL or Yahoo matters, therefore, pursuant to the terms of the Fee Agreement, the work on those matters was performed on an hourly basis, nevertheless, we permitted the deferment of 50% of those fees.

Again, however, Augme failed to uphold its end of the bargain and Shaub & Williams LLP now seeks payment for the full amount of the unpaid reasonable value of its services totaling $541,952.93 for the AOL matter and $472,471.50 for the Yahoo matter.

Lastly, Shaub & Williams LLP performed corporate work for Augme throughout the relationship, including organizing and transferring the files to Goodwin Proctor LLP, totaling $80,288.44 in unpaid reasonable value of its services.

Thus, Shaub & Williams LLP is presently demanding **payment of a total of $2,249,686.25** excluding interest.

Our intent by this letter is to reach out to you to find a resolution to the dispute before pursuing legal action to collect for the value of the services we provided during our representation. Enclosed pursuant to California's Code of Ethics for Attorneys is a notice of Augme's right to arbitrate this matter should it prefer to pursue that route.

We can be contacted as set forth above if you would like to discuss this matter further.

Very truly yours,

David R. Shaub
Managing Partner

# Notice of Client's Right To Arbitration

Augme Technologies, Inc. fka Modavox, Inc.
Client's Name
350 7th Ave. 2nd Floor, New York, NY 10001
Client's Address

David R. Shaub
Attorneys Name
12121 Wilshire Blvd, Suite 205
Attorneys Address
Los Angeles, CA 90025

You have an outstanding balance for fees and/or costs for professional services in the amount of $ 2,249,686.25

charged to you in the matter of AOL LLC; Tacoda, Inc.; Yahoo! Inc.; and for corporate matters

I have filed a lawsuit against you in the:

| | |
|---|---|
| Court | Case No. |
| Address | |

I have filed an arbitration proceeding against you with the:

| | |
|---|---|
| Agency | Case No. |
| Address | |

☒ No lawsuit or arbitration proceeding has yet been filed but may be filed if we do not resolve this claim.

You have the right under Sections 6200-6206 of the California Business and Professions Code to request arbitration of these fees or costs by an independent, impartial arbitrator or panel of arbitrators through a bar association program created solely to resolve fee disputes between lawyers and clients.

You will LOSE YOUR RIGHT TO ARBITRATION UNDER THIS PROGRAM if:

1. YOU DO NOT FILE A WRITTEN APPLICATION FOR ARBITRATION WITH THE BAR ASSOCIATION WITHIN 30 DAYS FROM RECEIPT OF THIS NOTICE USING A FORM PROVIDED BY THE LOCAL BAR ASSOCIATION OR STATE BAR OF CALIFORNIA FEE ARBITRATION PROGRAM; OR

2. YOU RECEIVE THIS NOTICE AND THEN EITHER (1) ANSWER A COMPLAINT I HAVE FILED IN COURT; OR (2) FILE A RESPONSE TO ANY ARBITRATION PROCEEDING THAT I HAVE INITIATED FOR COLLECTION OF FEES, AND/OR COSTS, WITHOUT FIRST HAVING SERVED AND FILED A REQUEST FOR ARBITRATION UNDER THIS PROGRAM; OR

3. YOU FILE AN ACTION OR PLEADING IN ANY LAWSUIT WHICH SEEKS A COURT DECISION ON THIS DISPUTE OR WHICH SEEKS DAMAGES FOR ANY ALLEGED MALPRACTICE OR PROFESSIONAL MISCONDUCT.

I have the right to file a lawsuit against you if you give up your right to mandatory fee arbitration. If I have already filed a lawsuit or arbitration, you may have the lawsuit or arbitration postponed after you have filed an application for arbitration under this program.

I have determined that:

☒ There is a local program which may have jurisdiction to hear this matter. The address of the arbitration program you should contact is:

ATTORNEY CLIENT MEDIATION & ARBITRATION SERVICES

| Name of Program | Los Angeles County Bar Association, P.O. Box 55020 | | |
|---|---|---|---|
| Address | Los Angeles | CA | 90055 |
| City | (213) 896-6426 | State | Zip Code |
| Telephone No | | | |

☐ There is no approved local program which has jurisdiction to hear this matter.

The State Bar of California will conduct fee arbitration (1) where there is no approved local program, (2) where there is a local program but it declines for any reason to hear your case, (3) where there is a local program and you wish non-binding arbitration of this dispute and the local program refuses to allow non-binding arbitration of your dispute, or (4) if you believe you cannot receive a fair hearing before the local bar named above. If you need assistance, please contact Mandatory Fee Arbitration, State Bar of California, 180 Howard Street, San Francisco, CA 94105-1639, (415) 538-2020.

10/12/2012
Date

Attorney

(State Bar Approved Form Rev. April 1, 2007)