UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAUB AND WILLIAMS, L.L.P., | Civil Action No. 13-cv-1101 (GBD)(jcf) ECF Case |
| Plaintiff, | |
| - against - | |
| AUGME TECHNOLOGIES, INC., | |
| Defendant. | |

**PLAINTIFF SHAUB AND WILLIAMS, LLP'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT'S
COUNTERCLAIMS UNDER FRCP 56**

## TABLE OF CONTENTS

I.  INTRODUCTION ……………………………………………………………  1

II.  FACTUAL BACKGROUND ……………………………………………….  3

    The Tacoda Action..........................................................................................  3

    The AOL/Time Warner Actions..................................................................  4

    S&W's Complaint and Augme's Counterclaims .....................................  5

III.  LEGAL STANDARD …….........……………………………………………  5

IV.  SUMMARY JUDGMENT IS WARRANTED ON AUGME'S LEGAL
     MALPRACTICE CLAIM .....................................................................…  7

    A. Augme Will Be Unable to Prove S&W's Alleged Negligence Proximately
       Caused Damages ....................................................................................…  7

       i. Damages were not proximately caused by a failure to file a first
         Motion for Sanctions. .............................................................  9

       ii. Damages were not proximately caused by a failure to issue a litigation
         hold. ....................................................................................... 10

       iii. Damages were not proximately caused by a misunderstanding of the
         patents-in-suit and the accused Tacoda/AOL technology. ................ 11

       iv. Damages were not proximately caused by a failure to issue discovery
         to a Burst Media server. ....................................................... 13

       v. Damages were not proximately caused by a failure to seek source code
         from Burst Media. .............................................................. 14

         1. Subsequent counsel had sufficient opportunity to protect
           Augme's rights. ...................................................... 17

       vi. Augme ADMITS its damages were not proximately caused by
         S&W .................................................................................. 18

V.  SUMMARY JUDGMENT IS WARRANTED ON AUGME'S DUPLICATIVE
    BREACH OF CONTRACT CLAIM …….........…………………….........…………….. 20

VI.  CONCLUSION ……………………………………………………………… 24

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>:                                                                                              Page #

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. N.Y. 2006)...............7

*A.G. Ship Maintenance Corp v. Lezak*, 69 N.Y.2d 1, 5 (N.Y. 1986)...................................8

*Alizio v Feldman*, 82 A.D.3d 804 (N.Y. App. Div. 2d Dep't 2011).....................................7

*AmBase Corp. v. Davis Polk & Wardwell*, 8 N.Y.3d 428 (N.Y. 2007)................................7

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999)....................................................................6

*Amusement Indus. v. Buchanan Ingersoll & Rooney, P.C.*, 2012 U.S. Dist.
LEXIS 50527 (S.D.N.Y. 2012)...........................................................................................21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).........................................................6

*Brown v. Samalin & Bock, P.C.*, 168 A.D.2d 531 (N.Y. App. Div. 2d Dep't 1990) .............16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................6

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir.2002) ...............................................6

*Diamond v. Sokol*, 468 F. Supp. 2d 626, 640-641 (S.D.N.Y. 2006).....................................24

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985).................................................................6

*Hooper Associates, Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 491 (N.Y. 1989) ............8

*Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190 (E.D.N.Y. 2012) ...........................20

*Iannazzo v. Day Pitney LLP*, 2007 U.S. Dist. LEXIS 50649, 29
(S.D.N.Y. July 10, 2007) ...................................................................................................22

*Joseph Delgreco & Co. v. DLA Piper L.L.P.*, 899 F. Supp. 2d 268 (S.D.N.Y. 2012)..........7

*Joyce v. Thompson Wigdor & Gilly LLP*, 2008 U.S. Dist. LEXIS 43210, 42
(S.D.N.Y. June 3, 2008).............................................................................................20, 23

*Katz v. Herzfeld & Rubin*, 48 A.D.3d 640 (N.Y. App. Div. 2d Dep't 2008) ........................17

*Levine v. Lacher & Lovell-Taylor*, 256 A.D. 2d 147 (1st Dept. 1998)..................................20

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898 (2d Cir.1997)............................................6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...................6, 7

*MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*, 701 F.
Supp. 2d 518 (S.D.N.Y. 2010)..........................................................................................20

*Minkow v. Sanders*, 82 A.D.3d 597 (N.Y. App. Div. 1st Dep't 2011)..................................17

*Morrison Cohen Singer & Weinstein v. Zuker*, 203 A.D.2d 119
(N.Y. App. Div. 1st Dep't 1994) .......................................................................................15

*Nordwind v. Rowland*, No. 04-9725, 2007 U.S. Dist. LEXIS 75764, 17
(S.D.N.Y. Oct. 10, 2007) ...................................................................................................20

*Nordwind v. Rowland*, 584 F.3d 420 (2d Cir. 2009).............................................................7

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
685 F. Supp. 2d 456 (S.D.N.Y. 2010)................................................................................10

*Pippins v. KPMG LLP*, 279 F.R.D. 245 (S.D.N.Y. 2012).....................................................10

*Ross v. American Express Co., et al.*, 2011 U.S. Dist. LEXIS 37355, 34
(S.D.N.Y. Mar. 29, 2011) ..............................................................................................6, 7

*Rubens v. Mason (Rubens II)*, 527 F.3d 252 (2d Cir. 2008)..................................................7

*Schwartz v. Olshan Grundman Frome & Rosenzweig*, 302 A.D.2d 193
(N.Y. App. Div. 1st Dep't 2003) ........................................................................................8

*Somma v. Dansker & Aspromonte Assoc.*, 44 A.D.3d 376
(N.Y. App. Div. 1st Dep't 2007) .......................................................................................17

*Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*,
No. 07-CV-2514, 2013 U.S. Dist. LEXIS 26984,46 (E.D.N.Y. Feb. 26, 2013) .........7, 15,16, 17

*Wolfson v. Bruno*, 844 F. Supp. 2d 348 (S.D.N.Y. 2011)......................................................7

<u>United States Statutes Other Law</u>:

Fed. R. Civ. P. 56............................................................................................................1, 6

Fed. R. Civ. P. 56(a) ...........................................................................................................6

Fed. R. Civ. P. 56(c)(1) ....................................................................................6

Fed. R. Civ. P. 12(d) .......................................................................................5

Fed. R. Civ. P. 12(b)(6) ...................................................................................6

Plaintiff Shaub & Williams, LLP ("S&W") respectfully submits this memorandum of law in support of its motion for summary judgment as to Defendant Augme Technologies, Inc.'s ("Augme") counterclaims for legal malpractice/professional negligence and breach of contract pursuant to Fed. R. Civ. P. 56.

## I.      INTRODUCTION

In this case, the undisputed facts and Augme's own admissions are completely contradictory to Augme's counterclaims and reveal Augme's failure to provide a credible theory as to why S&W's alleged negligence caused any damages.  It is well-established under New York law that summary judgment in favor of the moving party is warranted where the non-moving party's claims lack proximate causation.  Augme's counterclaims for legal malpractice/professional negligence and breach of contract allege that S&W's alleged negligence resulted in damages in the form of dismissal of its patent infringement suit against Tacoda, Inc. (the "Tacoda Action"), the instant lawsuit, and a charging lien against Augme's settlement funds in its suit against AOL.

To support this contention, Augme first alleges that its damages were caused by S&W's failure to file a first Motion for Sanctions for Spoliation of Evidence and Evasive Disclosure Practices in the Tacoda Action.  However, it is undisputed that S&W attempted to compel discovery by Tacoda and requested issue and monetary sanctions against Tacoda before the Court well before it filed its Motion for Sanctions.

Second, Augme alleges it was damaged by S&W's failure to issue a litigation hold to Tacoda before Tacoda issued internal instructions to destroy evidence relevant to Augme's infringement analysis.  This motion establishes, as a matter of law, that S&W had no such duty

to notify Tacoda of its own duty to hold relevant information when the suit against Tacoda was filed.

Third, Augme alleges it was damaged due to S&W's misunderstanding of the patents-in-suit and the accused Tacoda/AOL technology, resulting in poorly written claim construction briefs and incomprehensible motions.  Contrary to Augme's attempt to impute the complicated nature of the patent suit to S&W, the undisputed evidence demonstrates that the patent inventor, Augme's then Chief Technology Officer, and Augme's expert consultants in the field of Tacoda's technology played integral and supporting roles in the claim construction briefs and Motion for Sanctions.

Fourth, Augme asserts that it was forced to dismiss the Tacoda Action due to S&W's alleged failure to obtain relevant source code before the close of discovery in the Tacoda Action. However, Augme already admits that S&W issued discovery to Burst Media regarding the source code and that Burst Media supplied a sworn declaration that such source code was not in its possession.  Furthermore, under New York law, S&W's alleged failure to obtain certain discovery prior to trial is not dispositive of proximate causation.  Given that the disputed source code is not in the possession of Burst and admittedly destroyed by Tacoda, there is no possible way to prove whether it would have helped or hurt Augme in the Tacoda Action.  Therefore, any such analysis regarding proximate causation by the Court would be highly speculative.

Lastly and most importantly, Augme publically admitted in a press release on August 16, 2012, that any misconduct or negligence by S&W was not behind Augme's motivation to voluntarily dismiss the Tacoda Action.  In Augme's own words, Augme admitted that its potential recovery in the Tacoda Action was "negligible" compared to the expense involved, which, in itself, requires dismissal of the counterclaims as a matter of law for failing to allege

actual and ascertainable damages.  Augme's then CEO further admitted that Augme intended to dismiss the Tacoda Action to seek a "higher monetary recovery from the AOL cases" that were simultaneously pending before the Court.  Even if Augme is able to raise a triable issue of fact regarding S&W's alleged negligence, Augme will be unable to escape its own admissions and its inability to raise a triable issue of fact as to whether S&W's alleged negligence proximately caused Augme's alleged damages.

As a matter of law, Augme's breach of contract counterclaim also fails because all of the allegations contained therein sound in malpractice and under New York law, a breach of contract claim that is duplicative of a malpractice claim must be dismissed. Augme's breach of contract claim fails to allege facts regarding a promise of a particular or assured result but is, instead, based on the same breach of professional standards as the malpractice claim.  In addition, the redundancy of Augme's assertion of the same damages as its malpractice counterclaim also calls for dismissal of Augme's breach of contract counterclaim under New York law.

Therefore, as discussed below, S&W's motion for summary judgment as to both of Augme's counterclaims should be granted under Rule 56.

## II.      FACTUAL BACKGROUND

**The Tacoda Action**

In March 2008, S&W was engaged by Augme to assume the representation of Augme against Tacoda in *Augme Technologies, Inc. v. Tacoda, Inc*., Case No. 1:07-cv-0708 8-CM ("Tacoda Action") for infringement of two patents held by Augme.  [Amended Complaint, Ex. 1, Dkt. 3; Answer, Dkt. 8 ¶ 10.]  The patents in suit included U.S. Patent Nos. 6,594,691 ("the '691 Patent") and 7,269,636 ("the '636 Patent").  [Tacoda Action, Dkt. No. 5 ¶ 4.]  Before the close of the case, S&W moved for orders of withdrawal from the Tacoda Action and AOL/Time Warner

Action in April 2011.  [Amended Complaint, Dkt. 3 ¶ 28; Counterclaims ¶ 13.]  On August 24, 2012, Augme filed a Covenant Not to Sue in asserting direct or indirect infringement of the '691 and '636 Patents against Tacoda or AOL, Inc.  [Ex. 19; Tacoda Action, Dkt. 228.]  By September 4, 2012. Augme had entered into a stipulation with Tacoda to voluntarily dismiss all of its claims for infringement of the '691 and '636 Patents in the Tacoda Action.  [Tacoda Action, Dkt. 229.]

        In Count I of its Counterclaims, Augme alleges that S&W failed to resolve discovery issues in a timely manner and failed to obtain information and documents that could prove patent infringement.  [*Id*. ¶¶ 9-10.]  In addition, Augme alleges that S&W failed to pursue appropriate discovery [*Id*. at ¶¶ 11-12] and, as a result of its failure to obtain source code before the close of discovery, Augme was forced to dismiss the Tacoda Action.  [*Id*. at ¶ 14]  Significantly, however, neither of Augme's Counterclaims alleges that it would have succeeded in the Tacoda Action but for S&W's alleged malpractice.

**The AOL/Time Warner Actions**

        Tacoda was acquired by AOL, Inc. in September 2007.  [Ex. 19; Tacoda Action, Dkt. 228 p. 1.]  In January 2009, S&W was further engaged to allege patent infringement of the '691 and '636 Patents in the United States District Court, Central District of California against AOL and Time Warner, Inc. ("Time Warner").  [Amended Complaint ¶ 14; Answer ¶ 14.]  The patent infringement case against AOL/Time Warner was later transferred by S&W to this district as *Augme Technologies, Inc. v. AOL Inc. et al*., Case No. 1:09-cv-04299-RWS ("AOL Action I"). [*Id*. at ¶ 15; AOL Action, Dkt. No. 1.]

        On July 13, 2012, the patent claims of AOL Action I was further transferred to the Honorable Colleen McMahon and assigned the new docket number, Case No. 2:12-cv-05439-

CM-GWG ("AOL Action II" or collectively, "AOL Action").  [AOL Action II, Dkt. No. 1.]  On January 7, 2013, Augme filed another Covenant Not to Sue in asserting direct or indirect infringement of the '691 Patent against AOL, Inc.  [AOL Action II, Dkt. No. 56.]  In February 2013, Augme reached a favorable settlement with AOL in the AOL Action resulting in a lump sum payment of $650,000.  [Shaub Decl. ¶ 15, Ex. 20, p. 2.]  Although Augme's Counterclaims allege that it was damaged by an inappropriate charging lien against settlement funds in the AOL Action, Augme has failed to allege damages arising out of alleged misconduct committed by S&W during its representation of Augme in AOL Action I.

**S&W's Complaint and Augme's Counterclaims**

S&W filed its lawsuit for quantum meruit against Augme on February 20, 2013.  An amended complaint was filed thereafter on March 22, 2013.  On April 12, 2013, Augme answered the amended complaint and included two counterclaims alleging that S&W failed to obtain information and documents to prove patent infringement in the underlying Tacoda Action and excessively billed Augme ("Counterclaims").  As a result, Augme alleges damages in the form of dismissal of the Tacoda Action, the instant lawsuit, and a charging lien against Augme's settlement funds in the AOL Action.  Augme asserts a claim for legal malpractice/professional negligence (Count 1).  Based on the same facts as its malpractice claim, Augme also asserts a claim for breach of contract (Count 2).

On May 3, 2013, S&W filed a Motion to Dismiss Augme's counterclaims pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief may be granted.  The Motion to Dismiss is currently pending before the Court and will be heard on September 11, 2013.

## III.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(d), the Court has discretion, upon notice to the parties, to

convert a motion to dismiss into a motion for summary judgment, so as to permit consideration of "matters outside the pleadings." The conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is "strictly enforce[d]" and "mandatory." *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999); *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). A motion for summary judgment is the proper procedural device to consider facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence. *See Chambers v. Time Warner, Inc*., 282 F.3d 147, 154 (2d Cir.2002); *Lightfoot v. Union Carbide Corp*., 110 F.3d 898, 907 (2d Cir.1997).

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Ross v. American Express Co., et al*., 2011 U.S. Dist. LEXIS 37355, at *34-35 (S.D.N.Y. Mar. 29, 2011)(citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986)). The moving party bears the initial responsibility of demonstrating the absence of any genuine dispute as to a material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A motion for summary judgment may be successfully supported by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which the moving party believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); *see also* Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-87 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine [dispute] for trial," and summary judgment must be granted. *See Ross*, 2011 U.S. Dist. LEXIS at *34-35 (quoting *Matsushita*, 475 U.S. at 587 (quotations omitted)).

## IV.   SUMMARY JUDGMENT IS WARRANTED ON AUGME'S LEGAL MALPRACTICE CLAIM.

To prevail on a claim for legal malpractice under New York law, a client or former client must demonstrate (1) that the attorney was negligent, (2) that the negligence was a proximate cause of the injury and (3) that the client suffered actual and ascertainable damages.  *Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009)(citing *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. N.Y. 2006); *see also AmBase Corp. v. Davis Polk & Wardwell*, 8 N.Y.3d 428, 434 (N.Y. 2007).  "Each element must be established for a claim to succeed. Thus, '[i]n order for a defendant to succeed on summary judgment, it <u>must establish that the [client] is unable to prove at least one of the essential elements</u>.'"  *Joseph Delgreco & Co. v. DLA Piper L.L.P.*, 899 F. Supp. 2d 268 (S.D.N.Y. 2012)(emphasis added)(quoting  *Rubens v. Mason (Rubens II)*, 527 F.3d 252, 255 (2d Cir. 2008)); *see also Alizio v Feldman*, 82 A.D.3d 804 (N.Y. App. Div. 2d Dep't 2011).

### A.  Augme Will Be Unable to Prove S&W's Alleged Negligence Proximately Caused Damages

"To find proximate cause and actual damages, the plaintiff must meet a 'case within a case' requirement, that is, the Court must find that but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." *Wolfson v. Bruno*, 844 F. Supp. 2d 348, 356 (S.D.N.Y. 2011)(internal quotation marks and citations omitted).  Even if the plaintiff is able to demonstrate the attorney was negligent, the legal malpractice claim must be dismissed if

the plaintiff fails to establish proximate cause. *Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*, No. 07-CV-2514, 2013 U.S. Dist. LEXIS 26984, *46-47 (E.D.N.Y. Feb. 26, 2013)(citing *Schwartz v. Olshan Grundman Frome & Rosenzweig*, 302 A.D.2d 193 (N.Y. App. Div. 1st Dep't 2003)

Assuming arguendo that Augme is able to raise a triable issue of fact as to S&W's alleged negligence, Augme will still be unable to establish that S&W proximately caused any damages.  Augme's counterclaims for legal malpractice and breach of contract allege "damages to Augme in the form of dismissal of the Tacoda Action, the instant lawsuit, and an inappropriate charging lien against Augme's settlement funds in the AOL Action."  [Counterclaims, Dkt. 8 ¶¶ 17, 24.]  Augme's claim of damages based upon the instant lawsuit and S&W's charging lien in the AOL Action for unpaid attorneys' fees is wholly inappropriate.  It is well-settled in New York that "[u]nder the general rule, attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule." *A.G. Ship Maintenance Corp v. Lezak*, 69 N.Y.2d 1, 5 (N.Y. 1986); *Hooper Associates, Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 491 (N.Y. 1989).  Therefore, in order to prevail on its legal malpractice claim, Augme must demonstrate that S&W's allegedly negligent actions proximately caused the dismissal of the Tacoda Action.

Augme alleges that "[S&W] failed to take a course of action that would lead to <u>obtaining sufficient and responsive information and documents</u> such that Augme could <u>prove patent infringement</u>." [*Id*. at ¶ 9.]  To support this overarching contention of legal malpractice, Augme enumerates several unfounded allegations of instances by which S&W failed to obtain certain information and documents.  However, based on the undisputed evidence set forth below,

Augme will be unable to demonstrate that any of these allegations by Augme actually or proximately caused dismissal of the Tacoda Action.

### i. Damages were not proximately caused by a delay to file a first Motion for Sanctions.

First, Augme alleges in Counterclaims that S&W failed to "file a first motion for sanctions against the Tacoda defendant until October 28, 2009," over a year after Tacoda "failed to serve responses to Augme's discovery requests, including the production of documents," on July 23, 2008.  [*Id.* at ¶¶ 8-9.]  S&W persistently sought discovery responses and the production of documents from Tacoda and directly sought the assistance of the Court to compel production by Tacoda well before Augme filed its motion for sanctions.  On September 19, 2008, S&W approached the Court for assistance in resolving its discovery dispute with Tacoda, namely, Tacoda's refusal to produce discovery until resolution of Rule 11 issues raised by Tacoda. [Shaub Decl. ¶ 3, Ex. 2, p. 1.]  "Upon [S&W] seeking to compel discovery responses from Tacoda, the Court referred discovery disputes to Judge Gorenstein by Order dated September 23, 2008."  [Shaub Decl. ¶ 2, Ex. 1, p. 3.]  The Court refused Tacoda's request to stay any discovery pending resolution of the Rule 11 issues on October 6, 2008 [Tacoda Action, Docket Minute Entry, entered Oct. 7, 2008; Shaub Decl. ¶ 3, Ex. 2, p. 1], which occurred two weeks before Tacoda issued internal instructions to destroy evidence on October 21, 2008 [Counterclaims, Dkt. 8 ¶ 10].  As a result, S&W persisted in seeking discovery from Tacoda in further letters to the Court on January 23, 2009 [Shaub Decl. ¶ 3; Ex. 2], which requested the Court to impose issue sanctions against Tacoda, and March 23, 2009 [Shaub Decl. ¶ 4, Ex. 3], which also requested the Court to impose issue and monetary sanctions against Tacoda and attached a list sent by S&W to Tacoda regarding deficiencies in the source code and information produced by Tacoda.  On March 27, 2009, Tacoda responded that it had made a substantial document

production, but that it would further comply with S&W's requests for documents relating to the use of the Tacoda technology by AOL as a result of S&W's successful motion to transfer Augme's case against AOL to this Court on March 2, 2009.  [Shaub Decl. ¶ 5, Ex. 4, pp. 3-4.] Augme sent further letters to the Court regarding Tacoda's failure to comply with production of source code and other technical information on April 20, 2009 [Shaub Decl. ¶ 6, Ex. 5], which again requested the Court to impose issue and monetary sanctions against Tacoda for its evasive discovery tactics, and April 30, 2009 [Shaub Decl. ¶ 7, Ex. 6].  It is undisputed that these requests to compel discovery from Tacoda and impose sanctions against Tacoda were brought to the attention of the Court well before S&W filed its first motion for sanctions and that similar demands were made directly to Tacoda's counsel.  Therefore, Augme will be unable to raise a triable issue of fact as to whether S&W's alleged delay in filing a motion for sanctions until October 28, 2009 proximately caused dismissal of the Tacoda Action.

### ii.  Damages were not proximately caused by a failure to issue a litigation hold.

Second, Augme alleges in its Counterclaims that Tacoda's internal instructions to destroy evidence on October 21, 2008 could have been prevented if S&W had "issued a litigation hold to the Tacoda defendant."  [Counterclaims, Dkt. 8 ¶ 10.]  There is no duty or obligation whatsoever under New York law that requires plaintiff's counsel to issue a litigation hold to the defendant company.  In fact, counsel for the defendant or the defendant company itself is responsible for issuing the litigation hold to prevent spoliation of any evidence by employees.  *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 463-65, 473-75 (S.D.N.Y. 2010).  The "failure to issue a written litigation hold constitutes gross negligence" upon the defendant company, not opposing counsel.  *Id*. at 475.  The duty of preservation attaches to all "key players" of the corporation that hold relevant information when

that corporation reasonably anticipates litigation.  *Pippins v. KPMG LLP*, 279 F.R.D. 245

(S.D.N.Y. 2012)(citing *Pension Comm. of Univ. of Montreal Pension Plan*, 685 F. Supp. 2d at

466).  The fact that Tacoda/AOL violated its duty to preserve evidence after suit was filed, in

which Augme admits "the Tacoda defendant issued internal instructions to destroy evidence on

October 21, 2008," does not render S&W liable for negligence due to its failure to oversee the

operations of Tacoda/AOL and prevent the destruction of such evidence.  [Counterclaims, Dkt. 8

¶ 10.]  Simply put, S&W cannot be blamed for the destruction of potentially relevant evidence by

a third-party wrongdoer.  Tacoda/AOL's duty to preserve evidence cannot be excused by the

absence of a litigation hold notice by the company's counsel or opposing counsel.  Despite a lack

of duty on the part of S&W to issue a litigation hold to Tacoda, S&W did, in fact, sent a letter to

Tacoda's counsel on on April 2, 2009 to remind Tacoda of its obligation to preserve evidence

when S&W was first made aware that critical portions of Tacoda's source code had not been

preserved.  [Shaub Decl. ¶ 8, Ex. 7.]  Therefore, Augme will be unable to raise a triable issue of

fact as to whether S&W's failure to issue a litigation hold to Tacoda prior to October 21, 2008

proximately caused dismissal of the Tacoda Action.

### iii.  Damages were not proximately caused by a misunderstanding of the patents-in-suit and the accused Tacoda/AOL technology.

Third, Augme alleges that "[S&W] misunderstood the patents-in-suit and the accused

Tacoda/AOL technology... and submitted poorly written claim construction briefs and

incomprehensible motions."  [Counterclaims, Dkt. 8 ¶ 11, 15.]  However, it is undisputed that

throughout the litigation, S&W was assisted by experts in the field of Augme's technology and

more importantly, the inventor of the disputed patents, Andrew Burgess, and Augme's then

Chief Technology Officer, Nathaniel Bradley.  On March 2007, Augme announced that it had

engaged inventor Mr. Burgess to conduct patent infringement studies on its behalf.  [Shaub Decl.

¶ 9, Ex. 8.] Mr. Burgess entered into a consulting agreement with Augme on December 7, 2007,

whereby Mr. Burgess' services included "[c]onsulting with the Company and its counsel and

testifying as a witness in any proceeding regarding enforcement of the Company Patents or any

counterclaim against the Company in connection therewith, including the preparation of

litigation case studies, writings, artwork, drawings, designs, code, internet-based products,

templates, graphic and computer-generated material comparisons and opinions in connection

therewith."  [Shaub Decl. ¶ 10, Ex. 9, pp. 1, 12 (emphasis added).]  Pursuant to this consulting

agreement, Mr. Burgess submitted an Affidavit Declaration in support of S&W's supplemental

claim construction statement on April 24, 2009.  [Ex. 10; Tacoda Action, Dkt. 47-4.]  S&W's

claim construction briefs regarding Augme's patented technology were also prepared with the

assistance and revisions of Mr. Bradley and Augme's expert consultant, Arthur Keller.  [Shaub

Decl. ¶¶ 11-12, Exs. 11, 12.]

It is also undisputed that Augme's consultants provided assistance to S&W with regard to

S&W's Motion for Sanctions for Spoliation of Evidence and Evasive Disclosure Practices.  On

October 28, 2009, Mr. Burgess provided a Declaration in support of S&W's Motion for

Sanctions that detailed his analysis of Tacoda's technology, his completion of claim charts

regarding Tacoda's code, and his findings regarding Tacoda's infringement of Augme's patents

[Ex. 13; Tacoda Action, Dkt. 56, pp. 4-7.]  Another expert consultant, Andrew Cromarty Ph.D.,

also provided a declaration in support of S&W's Motion for Sanctions that detailed all of his

findings regarding deficiencies in Tacoda's discovery [Ex. 14; Tacoda Action, Dkt. 55, pp. 7-35]

and edited the content of the Motion for Sanctions itself [Shaub Decl. ¶ 13; Ex. 15, p. 1].

Assuming arguendo that Augme is able to raise a triable issue of fact as to S&W's actual

understanding of the patents and Tacoda technology, Augme will be unable to put forth any

evidence that S&W's alleged misunderstanding was so negligent as to proximately cause Augme to dismiss the Tacoda Action.  The evidence is clear that S&W's claim construction briefs and Motion for Sanctions were supported by the patent inventor's own infringement analyses of Tacoda's code and infringement charts, as well as the analyses of Tacoda's deficient discovery by Augme's expert consultants.  Therefore, Augme will be unable to raise a triable issue of fact as to whether a misunderstanding by S&W regarding the patents-in-suit and accused Tacoda/AOL technology proximately caused dismissal of the Tacoda Action.

### iv.  Damages were not proximately caused by a failure to issue discovery to a Burst Media server.

Fourth, Augme alleges in its Counterclaims that S&W's motions for sanctions against Tacoda were "directed to evidence irrelevant to the infringement analysis."  [Counterclaims, Dkt. 8 ¶ 9.]  In support of this contention, Augme alleges that S&W "issued discovery regarding an irrelevant Internet server instead of the relevant server hosted by Burst Media."  [*Id*. at ¶ 11.]  However, in its Counterclaims, Augme contradictorily admits that S&W did issue discovery to Burst when "[S&W] subpoenaed Burst Media."  [*Id*. at ¶ 12.]  It is undisputed that on June 10, 2009, Burst was served with a subpoena from S&W to produce documents, which requested log files from Burst's web servers, configuration files on the Burst server and code between Burst and Tacoda that was hosted on Burst's server.  [Ex. 16; Tacoda Action, Dkt. 79-3, Burst Declaration, p. 2 and Request No. 6, p. 12.]  Therefore, Augme's allegation that S&W failed to issue discovery relating to Burst Media's server is blatantly false and Augme will be unable to raise a triable issue of fact as to whether S&W's alleged failure to issue such discovery proximately caused dismissal of the Tacoda Action.

In addition, as established in section (iii), above, any evidence identified and cited in S&W's motions for sanctions were based on information provided by the declarations of Mr.

Burgess and Dr. Cromarty, which consisted of infringement analyses of the <u>inventor</u> of the patents-in-suit and the findings of an expert consultant in the field of Tacoda's technology.  In fact, Mr. Burgess' declaration to the Motion for Sanctions enumerated a condensed list of general deficiencies in Tacoda's discovery, including missing evidence that was relevant to Augme's infringement analysis, which was provided to Tacoda's attorneys on March 11, 2009. [Ex. 13; Tacoda Action, Dkt. 56, pp. 7-8.]  Augme cannot possibly demonstrate a causal relationship between S&W's citation of certain evidence in its Motion for Sanctions and Augme's decision to dismiss the Tacoda action when it is undisputed that such evidence was identified by Mr. Burgess and Dr. Cromarty and specifically pulled from their declarations. Therefore, Augme will be unable to raise a triable issue of fact as to whether S&W's actions in citing to allegedly irrelevant evidence in its Motions for Sanctions proximately caused dismissal of the Tacoda Action.

> **v.  Damages were not proximately caused by a failure to seek source code from Burst Media.**

Fifth, Augme alleges in its Counterclaims that S&W failed to seek specific source code relating to the "second code module" from Burst Media and instead, "agreed to the receipt of a declaration concerning the existence of other documents and materials."  [*Id*. at ¶ 11-12.]  It is undisputed that S&W's subpoena to Burst Media requested the production of "ALL DOCUMENTS that show <u>each instance of code</u> (e.g. JAVA, HTML, XML) and the native files of code itself <u>hosted by [Burst Media] for TACODA on a server</u> from January 2006 to the present.  [Ex. 16; Tacoda Action, Dkt. 79-3, Request No. 6, p. 12.]  Since S&W's subpoena called for "each instance of code... hosted by [Burst] for TACODA," any source code relating to the "second code module" was undoubtedly encompassed by S&W's request.  On March 29, 2010, the custodian of records of Burst Media executed a declaration verifying that the requested

"source code used by Tacoda was <u>not in the possession of Burst Media</u>."  [*Id*. p. 3, ¶10 (emphasis added).]  Regardless of whether Burst's statement regarding such source code was, in fact, true, the Burst's declaration was executed under penalty of perjury under the laws of the United States.  Accordingly, it was completely reasonable for S&W to accept Burst Media's declaration and to seek to compel the necessary evidence from alternate sources.  Given that attorneys are afforded "reasonable strategic choices regarding litigation" and such choices "do not, as a matter of law, constitute malpractice," Augme will be unable to establish as a matter of law or fact that Augme's reliance on statements contained in the sworn declaration of Burst's custodian of records proximately caused the dismissal of the Tacoda Action.  *See Morrison Cohen Singer & Weinstein v. Zuker*, 203 A.D.2d 119 (N.Y. App. Div. 1st Dep't 1994).

Furthermore, a failure by S&W to obtain certain discovery prior to trial is not dispositive in proximately causing the damages alleged by Augme under New York law.  In *Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*, third-party defendants (collectively, "Law firms") filed motions for summary judgment as to defendants/third-party plaintiff's ("Client") claim for legal malpractice against each firm in federal court.  2013 U.S. Dist. LEXIS at *35-36.  In a prior state court action, a dentist ("Dentist") commenced a suit against Client seeking damages for personal injuries arising out of a car accident with Client.  *Id*. at *4-5.  Dentist alleged he sustained serious injuries requiring surgery and resulting in lost earnings.  *Id*. at *5-6.  Dentist further testified in a deposition that he used a computer program, Dentrix, to maintain business records of his surgery appointments and billing records, which would have substantiated dentist's lost earnings figures.  *Id*. at *8-9, 39-40.  In the federal court action, Client argued that Law firms were liable for legal malpractice in failing to obtain the Dentrix records of Dentist prior to trial.  *Id*. at *37-38.  The court rejected Client's arguments and reasoned that while Law Firms' failure to obtain the

Dentrix Records pre-trial may have damaged the Client by causing an increase in the settlement offer, "it is complete speculation what, if any, effect the those records would have had on the settlement negotiations." *Id*. Since the Dentrix records were not subpoenaed in the federal action, the court noted that it is possible the Dentrix records would have been beneficial to Dentist's claims, thereby causing an increase in the settlement offer, or the records would have been detrimental to Dentist's claims by revealing flaws in the lost earnings calculations, thereby forcing Dentist to decrease its settlement offer. *Id*. The court held that Client failed to raise a triable issue of fact as to whether Law Firms' failure to obtain the Dentrix records proximately caused any damages and granted Law Firms' motions for summary judgment as to the legal malpractice claims. *Id*. at *49-51 (citing to *Brown v. Samalin & Bock, P.C.*, 168 A.D.2d 531, 531-32 (N.Y. App. Div. 2d Dep't 1990)("granting summary judgment in favor of attorney on malpractice claim because the damages claimed by the plaintiff were 'too speculative and incapable of being proven with any reasonable certainty'").

The facts in *Tokio Marine* are striking similar to the present case and warrant the same result. Here, Augme argues that S&W is liable for legal malpractice in failing to obtain the Burst-related code prior to trial. Augme further alleges that this phantom code would have revealed the "second code module" and proved patent infringement by Tacoda/AOL, which is similar to Dentist's allegation that the Dentrix records would have supported its lost earnings calculations. In both situations, neither Dentist nor Augme is able to factually support these allegations. However, unlike in *Tokio Marine*, it is wholly undisputed that Burst-related code was, in fact, subpoenaed by S&W and S&W received a response from Burst about the existence of the code hosted on its servers. Therefore, to determine proximate causation in this action, this Court will be forced to take one step further than the court in *Tokio Marine* by speculating about

whether or not any Burst-related code would be beneficial to Augme's Counterclaims <u>and</u> ignoring the sworn statements of Burst's custodian of records regarding such code.  Based upon the same grounds as the court in *Tokio Marine*, this Court should hold that Augme will be unable to raise a triable issue of fact as to whether S&W's alleged failure to obtain the Burst-related code proximately caused any damages.

### 1. Subsequent counsel had sufficient opportunity to protect Augme's rights.

"Courts in New York regularly hold that a lawyer's negligent actions cannot be the proximate cause of a plaintiff's alleged damages if subsequent counsel had 'a sufficient opportunity to protect the plaintiffs' rights by pursuing any remedies it deemed appropriate on their behalf.'"  *Tokio Marine*, 2013 U.S. Dist. LEXIS at *52 (citing *Katz v. Herzfeld & Rubin*, 48 A.D.3d 640, 641 (N.Y. App. Div. 2d Dep't 2008); see also *Minkow v. Sanders*, 82 A.D.3d 597, 598 (N.Y. App. Div. 1st Dep't 2011)("Defendants' alleged failures to obtain and provide discovery . . . could have been remedied by successor counsel."); *Somma v. Dansker & Aspromonte Assoc.*, 44 A.D.3d 376, 377 (N.Y. App. Div. 1st Dep't 2007)(dismissing the plaintiff's legal malpractice claim because "successor counsel had sufficient time and opportunity to adequately protect plaintiff's rights").

Here, even though source code relating to Tacoda/AOL was not obtained by S&W from Burst pursuant to Burst's sworn declaration that such code was not in its possession, Augme's subsequent counsel, Goodwin Procter, had sufficient opportunity to protect Augme's rights by obtaining additional information and documents regarding the source code.  In fact, in a hearing before the Court regarding discovery disputes on July 16, 2012, Goodwin Procter admitted that Augme did not even need the actual source code from Burst or Tacoda because the production of documents by Tacoda supporting the functionality of the source code would "suffice."  [Ex. 17;

Tacoda Action, Dkt. 215, pp. 13:3-14:8.]  Goodwin Procter argued that due to the close relationship between Burst and Tacoda, Tacoda would have supporting technical documentation from Burst that is relevant to the source code and would assist Augme in proving patent infringement by Tacoda.  *Id*.  Accordingly, the Court ordered Tacoda to produce any technical documentation in its possession that describes the functionality of the source code, as requested by Goodwin Procter.  *Id*. at pp. 17:9-18:22.  If Tacoda did not have the technical documents, the Court ordered Tacoda to describe in writing the efforts it made to look for them and what exists with regard to such documentation.  *Id.*  Therefore, based upon Augme's ability to obtain documents relating to the source code through its subsequent counsel, Augme will be unable to raise a triable issue of fact regarding this issue as well.

### vi.  Augme ADMITS its damages were not proximately caused by S&W.

Lastly, Augme alleges that, "[d]ue to [S&W's] failure to obtain the relevant source code before the close of discovery in the Tacoda Action, Augme was eventually forced to dismiss the Tacoda Action."  However, the best evidence of a company's motivation to voluntarily dismiss a case is the admissions of the company itself.  On August 16, 2012, Augme submitted a public press release stating that it "intends to terminate [the Tacoda Action] which is directly related to the Tacoda system as acquired by AOL but only as used prior to AOL's integration of that system into its own operations."  [Shaub Decl. ¶ 14, Ex. 18, p. 1.]  AOL acquired Tacoda on or about September 7, 2007 and began to integrate and utilize Tacoda's system with Augme's patented technology no later than September 28, 2007.  [Ex. 19; Tacoda Action, Dkt. 228 p. 1.]  Due to Augme's simultaneous suit against AOL, the Court ruled in that any infringement by the Tacoda/AOL system <u>after</u> Tacoda was acquired by AOL in 2007 would be addressed in the AOL Action.  [Ex. 17; Tacoda Action, Dkt. 215, p. 2:14-24.]  Pursuant to the Court's ruling, Augme's

press release admitted:

> [O]n August 2, 2012, Judge Colleen McMahon ruled that [the Tacoda Action] was limited to Tacoda operations prior to their integration into AOL's operations. <u>As a result of this ruling, the recovery available to Augme in this case was **negligible**</u> compared to the expense involved and no prospective injunctive relief was available.  Accordingly, in order not to waste the time of the court or the parties, <u>Augme intends to terminate the case and</u> <u>allow for the expeditious pursuit of the other litigations against AOL</u>.

[Shaub Decl. ¶ 14, Ex. 18, p. 1 (emphasis added).]   One week following this press release, Augme filed the Covenant Not To Sue Tacoda and AOL for any infringement of its patents by Tacoda/AOL prior to AOL's integration of Tacoda's technology in or around September 28, 2007, citing to Judge McMahon's August 2012 ruling.   [Ex. 19; Tacoda Action, Dkt. 228, p. 1.] Two weeks thereafter, Augme voluntarily dismissed the Tacoda Action.  [Tacoda Action, Dkt. 229.]

Augme's press release came more than a year after S&W withdrew from the Tacoda Action and AOL Action, but failed to mention any wrongdoing or malpractice by S&W that influenced Augme's decision to voluntarily dismiss the Tacoda Action.  Based upon Augme's admissions, no such blame directed to S&W could be made.  Judge McMahon's ruling regarding the scope of infringement in the Tacoda Action had nothing to do with Burst, any presence or absence of source code, S&W's Motions for Sanctions or any discovery dispute whatsoever between the parties.  Plain and simple, AOL acquired Tacoda in 2007 and the Court found that any infringement by AOL due to its integration of Tacoda's system post-acquisition would be addressed in the AOL Action.  As a result of the pending AOL Action, Augme <u>admitted</u> that any potential recovery in the Tacoda Action was "negligible."  Not only does Augme admit S&W did not proximately cause its decision to dismiss the Tacoda Action, but also, Augme could not have obtained a better outcome in the case than dismissal.  Therefore, Augme's claim for malpractice

also fails as a matter of law for failure to prove damages.

As stated in the press release, Augme did, in fact, pursue its litigation against AOL in the AOL action and obtained a settlement in the form of a lump sum payment of $650,000.  [Shaub Decl. ¶ 15, Ex. 20, p. 2.]  Augme's then CEO, Paul Arena, also publicly verified that Augme's motivation to dismiss the Tacoda Action was to pursue bigger fish: "the court has taken us down a path that is not worth pursuing against Tacoda.  Rather, we have every confidence that there is a potential for a higher monetary recovery from the other AOL cases involving Time Warner and Gannett."  [Shaub Decl. ¶ 14, Ex. 18, p. 2.]  Given Augme's admissions regarding its motives to voluntarily dismiss the Tacoda Action, none of which involved any alleged malpractice by S&W, Augme's Counterclaims fail to articulate a credible theory as to why S&W's alleged negligence caused any damages.  Accordingly, Augme will be unable to raise a triable issue of fact as to whether S&W's alleged negligence proximately caused dismissal of the Tacoda Action and in addition, whether Augme's alleged damages are even ascertainable.

Therefore, based upon on all of the undisputed evidence cited above, summary judgment is warranted on Augme's legal malpractice counterclaim.

## V.      SUMMARY JUDGMENT IS WARRANTED ON AUGME'S DUPLICATIVE BREACH OF CONTRACT CLAIM.

This Court has determined that a motion for summary judgment in favor of defendant attorneys is proper where plaintiff's breach of contract claim is duplicative of the legal malpractice claim.  *Nordwind v. Rowland*, No. 04-9725, 2007 U.S. Dist. LEXIS 75764, *17-18 (S.D.N.Y. Oct. 10, 2007).  It is well-established under New York law that where a breach of contract claim is premised on the same facts and seeks identical relief as a legal malpractice claim, the breach of contract claim is duplicative and must be dismissed.  *Joyce v. Thompson Wigdor & Gilly LLP*, No. 06 Civ. 15315, 2008 U.S. Dist. LEXIS 43210, *40 (S.D.N.Y. June 3,

2008).  The issue of whether claims are duplicative is not based on the theory behind a claim, whether it is breach of contract or breach of a fiduciary duty.  *See MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.,* 701 F. Supp. 2d 518, 532 (S.D.N.Y. 2010).  If a plaintiff's grounds for the claim "sound […] in negligence, not contract... and are merely duplicative of plaintiff's negligence action," then the breach of contract claim should be dismissed.  *Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 212 (E.D.N.Y. 2012)(citations omitted); *see also Levine v. Lacher & Lovell-Taylor*, 256 A.D. 2d 147, 151 (1st Dept. 1998)(finding that "a breach of contract claim premised on the lawyer's failure to exercise due care or to abide by general professional standards is nothing but a redundant pleading of the malpractice claim.")

"In considering whether a claim is duplicative of a malpractice claim, namely whether the claims at issue are premised on the same facts and seek the same relief as a malpractice claim," this Court has considered instances where "the claim at issue incorporates all the prior allegations of the complaint and assert[s] it again as a basis for the claim."  *Amusement Indus. v. Buchanan Ingersoll & Rooney, P.C.*, 2012 U.S. Dist. LEXIS 50527 (S.D.N.Y. 2012).  In *Amusement*, the magistrate court recommended dismissal of the duplicative claims because the additional allegations beyond those incorporated by reference were "entirely consistent with, and largely duplicative of, the factual allegations made earlier in the complaint.  Additionally, the substantive claim for damages for each claim of relief is either identical to or a subset of the claim in the malpractice claim."  *Id*.

Here, Augme's breach of contract counterclaim completely sounds in negligence or legal malpractice.  Augme's legal malpractice counterclaim alleges that S&W "owed Augme a duty" [Counterclaims § 7.]  Similarly, Augme states in its breach of contract counterclaim that, "by virtue of the duties owed generally to clients by lawyers," S&W also "owed Augme a duty."  [*Id*.

§ 21.]  Augme alleges that S&W excessively billed Augme in its counterclaim for legal malpractice [Count I of Counterclaims, Dkt. 8 ¶ 16] and continues to repeat its allegations of excessive billing in the claim for breach of contract [Count II of Counterclaims, Dkt. 8 ¶ 21], which are not proper allegations of breach of contract.  Augme's allegation that S&W threatened it with violations of securities law disclosure requirements also sounds of legal malpractice simply by way of Augme's citation to the "Model Rules of <u>Professional </u>Conduct."  [*Id.* ¶ 22.] Both counterclaims not only use the same language that sound in malpractice, but Augme's breach of contract counterclaim also "incorporates by reference all of the above paragraphs of this Counterclaim as though fully stated herein," whereby Augme repeats all of the facts and allegations of its legal malpractice counterclaim.  In addition, Augme's breach of contract claim fails to set forth distinct damages from the damages alleged in the malpractice claim.  Both claims repetitively allege that S&W's actions "resulted in damages to Augme in the form of dismissal of the Tacoda Action, the instant lawsuit, and an inappropriate charging lien against Augme's settlement funds in the AOL Action, among other things."

Furthermore, "a breach of contract claim against an attorney is generally duplicative of a legal malpractice claim, unless a lawyer promises a specific result to his client or breaches an implied promise of due care" in performing services required by the contract.  *Iannazzo v. Day Pitney LLP*, 2007 U.S. Dist. LEXIS 50649, *29-30 (S.D.N.Y. July 10, 2007).  In addition, this Court has specifically limited a party's reliance on other claims of relief in malpractice cases in order to prevent such duplicative cause of action.  *Joyce v. Thompson Wigdor & Gilly LLP*, 2008 U.S. Dist. LEXIS 43210, *42-43 (S.D.N.Y. June 3, 2008).  As a result, a party cannot succeed on any other causes of action if he cannot succeed on the malpractice cause of action.  *Id.*

Throughout the litigation and as evident from S&W's engagement agreement [Complaint, Ex. 1.], S&W did not promise a specific result for Augme, whether it be settlement, injunction, licensing deal, etc.  Nor does Augme's Counterclaims allege facts establishing that Augme made promises regarding the outcome or progress of the litigation.  It is evident from Augme's Counterclaims that Augme's malpractice and breach of contract claims are both premised on allegations that S&W's actions "fall below the level of competence and conduct in the relevant professional community" [Counterclaims ¶ 17] and violated "duties owed generally to clients by lawyers" [Counterclaims ¶ 21].  Therefore, both counts sound in malpractice due to a purported failure to abide by general professional standards regarding discovery and billing and as a result, are redundant.  Based upon the undisputed evidence described in Section IV, above, Augme will not be able to sustain a claim for legal malpractice since it will be unable to raise a triable issue of fact as to whether S&W's alleged negligence proximately caused dismissal of the Tacoda Action.  As a result, Augme will not be able to prevail on its duplicative breach of contract claim under *Joyce v. Thompson Wigdor & Gilly LLP*.

Augme's breach of contract allegations rest upon an alleged breach of professional standards and not upon a promise of a particular or assured result and in addition, allege the exact same damages as the malpractice claim.  Therefore, Augme's breach of contract claim is redundant of the malpractice claim and the Court should enter summary judgment in favor of S&W on Augme's counterclaim for breach of contract as a matter of law.  *Diamond v. Sokol*, 468 F. Supp. 2d 626, 640-641 (S.D.N.Y. 2006).

///

///

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff S&W respectfully requests that the Court grant summary judgment for S&W on both counterclaims.


Dated: August 14, 2013                    Respectfully submitted,

                                          By: /s/ David R. Shaub
                                              David R. Shaub, Esq.
                                              Lisbeth Bosshart Merrill, Esq.
                                              Cassandra M. Tam, Esq.
                                              Attorneys for the Plaintiff
                                              SHAUB & WILLIAMS, LLP
                                              12121 Wilshire Blvd., #205
                                              Los Angeles, CA 90025
                                              Tel.: (310) 826-6678

Wdx-73496                                 24