```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
SHAUB AND WILLIAMS, L.L.P.,          : 13 Civ. 1101 (GBD) (JCF)
                                     :
               Plaintiff,            :         MEMORANDUM
                                     :         AND   ORDER
     - against -                     :
                                     :
AUGME TECHNOLOGIES, INC.             :
                                     :
                                     :
               Defendant.            :
- - - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

In this action for recovery of unpaid legal fees, Shaub & Williams, LLP ("S&W") moves pursuant to Rule 37 of the Federal Rules of Civil Procedure to compel document production of attorney-client communications and attorney work product from Augme Technologies, Inc. ("Augme") and to compel the depositions of Augme's current and former counsel, Tom Scott of Goodwin Procter LLP and Richard Sybert of Gordon & Rees LLP.  For the reasons that follow, the motion to compel is denied.

Background

Beginning in 2008, S&W represented Augme (as its predecessor, Modavox, Inc.) in litigation pursuing patent infringement claims. (Plaintiff's Memorandum of Law in Support of its Motion to Compel the Depositions of Richard Sybert and Tom Scott, Attorneys for Augme Technologies, Inc., and for the Production of Documents under

1

FRCP 37 ("Pl. Memo.") at 3; Opposition to Plaintiff's Notice of Motion and Motion to Compel the Depositions of Richard Sybert and Tom Scott, Attorneys for Augme Technologies, Inc., and for the Production of Documents under FRCP 37 ("Def. Memo.") at 1-2). In February 2011, Augme terminated S&W and retained Goodwin Procter as counsel in the patent cases; S&W formally withdrew from the underlying litigation in April 2011. (Def. Memo. at 2; Pl. Memo. at 3).

On February 19, 2013, S&W filed a complaint against Augme alleging that it owed over $2 million in outstanding legal fees under a theory of quantum meruit. (Complaint, ¶¶ 4, 30; Pl. Memo. at 5). Augme responded with two counterclaims alleging legal malpractice and breach of contract and also asserted a number of affirmative defenses. (Answer to First Amended Complaint; Affirmative Defenses; Counterclaim; and Jury Demand ("Answer") at 8-14). The legal malpractice counterclaim alleged that in the underlying patent litigation, S&W failed to resolve discovery issues in a proper and timely manner, "misunderstood" the patented technology in question, and "submitted poorly written claim construction briefs and incomprehensible motions." (Answer at 11-13, ¶¶ 6-17; Def. Memo. at 2). One affirmative defense alleged that S&W had been dismissed as counsel for Augme for good cause; a second asserted that S&W had engaged in excessive billing; and a

2

third maintained that S&W was proceeding with "unclean hands." (Answer at 8-9, ¶¶ 2, 4, 12).

On May 6, 2013, S&W filed a motion to strike some of the affirmative defenses and a motion to dismiss the counterclaims. While those motions were still pending, S&W filed a motion for summary judgment on the legal malpractice and breach of contract counterclaims. (Plaintiff Shaub and Williams, LLP's Memorandum of Law in Support of its Motion for Summary Judgment as to Defendant's Counterclaims Under FRCP 56). The motion for summary judgment was denied without prejudice as premature, since discovery had not been completed. (Order dated Oct. 3, 2013).

On February 14, 2014, the Honorable George B. Daniels, U.S.D.J., granted in part S&W's motions to dismiss Augme's counterclaims and strike its affirmative defenses. Shaub & Williams, L.L.P. v. Augme Technologies, Inc., No. 13 Civ. 1101, 2014 WL 625390 (S.D.N.Y. Feb. 14, 2014). Judge Daniels dismissed Augme's legal malpractice counterclaim for failure to plead facts adequate to support causation, specifically, to demonstrate that "but for alleged instances of [S&W's] misconduct, the outcome of [the underlying litigation] would have been [different]." Id. at *5. He also denied Augme leave to file an amended legal malpractice counterclaim and new counterclaims for breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty. Id. at *1-3. However, he sustained the

3

counterclaim for breach of contract and permitted Augme to amend it to add facts alleging excessive billing, finding that it was not duplicative of the malpractice claim, as S&W had alleged. Id. at *6. Finally, Judge Daniels granted Augme leave to amend its affirmative defenses of dismissal for good cause and breach of contract, but struck its defenses of laches, waiver, estoppel, and unclean hands. Id. at *7-9.

While these motions were pending, S&W issued a request for production of documents to Augme and a subpoena to Goodwin Procter seeking "[a]ll documents, electronically stored information, and things concerning communications" between Augme and Goodwin Procter regarding various topics of the underlying litigation, including patent infringement analyses, document production, settlement negotiations, S&W's performance of legal services, compensation owed to S&W, and the continuation of S&W's services after Augme first contacted Goodwin Procter. (Defendant/Counterclaimant Augme Technologies, Inc.'s Response to Plaintiff/Counterclaim Defendant Shaub & Williams LLP's First Set of Request for Production of Documents at 5-8, 10; Objections of Goodwin Procter LLP to Shaub & Williams LLP's D.D.C. Subpoena Directed to Goodwin Procter L.L.P. in Connection with Shaub and Williams, L.L.P. v. Augme Technologies, Inc., No. 13 Civ. 01101 (S.D.N.Y.) at 4-8, 11). Beginning in July 2013, S&W, Augme, and Goodwin Procter met and conferred on several occasions regarding these requests, but Augme

4

and Goodwin Procter objected and claimed that the information sought was protected by attorney-client privilege and the work product doctrine. (Pl. Memo. at 9-10). S&W subsequently filed the present motion to compel document production and depositions, and the parties fully briefed these motions prior to Judge Daniels' ruling on the motion to dismiss. In light of that decision, I gave the parties an opportunity to supplement their briefs on the motion to compel. S&W alleges that the dismissal of Augme's malpractice counterclaim has no impact here because Augme "reasserts portions of [its] counterclaims for malpractice [and] breach of contract." (Letter of David Shaub dated Feb. 28, 2014).[1] Augme counters that there is now "absolutely no reason to grant S&W's motion to compel, as it was based solely on discovery information relating to [Augme's] legal malpractice counterclaim and damages related thereto." (Supplement to Opposition to Plaintiff's Notice of Motion and Motion to Compel the Depositions of Richard Sybert and Tom Scott, Attorneys for Augme Technologies, Inc., and for the Production of Documents under FRCP 37 at 2).

---

[1] S&W subsequently submitted another letter providing examples of such reassertions. (Letter of David Shaub dated March 6, 2014 ("Shaub 3/6/14 Letter")). This information could and should have been included in the February 28, 2014 letter. In any event, the more detailed allegations it raises are addressed in the discussion below.

Discussion

    A.   Discovery of Documents and Communications

        1.   Legal Standard

            i.   Attorney-Client Privilege

The attorney-client privilege protects from disclosure "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007) (citing United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)); accord United States v. Ghavami, 882 F. Supp. 2d 532, 536 (S.D.N.Y. 2012). The privilege protects both the advice of the attorney to the client and the information communicated by the client that provides a basis for giving advice. See Upjohn Co. v. United States, 449 U.S. 383, 390 (1981); In re Six Grand Jury Witnesses, 979 F.2d 939, 943-44 (2d Cir.1992); Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 554 (S.D.N.Y. 2013). "[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir.1984) (citations and internal quotation marks omitted); accord Ghavami, 882 F.Supp.2d at 536.

The attorney-client privilege may be waived "when the defendant asserts a claim that in fairness requires examination of

protected communications." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). "The key to a finding of implied waiver . . . is some showing by the party arguing for a waiver that the opposing party <u>relies</u> on the privileged communication as a claim or defense or as an element of a claim or defense." In re County of Erie, 546 F.3d 222, 228 (2d Cir. 2008); accord Leviton Manufacturing Co. v. Greenberg Traurig LLP, No. 09 Civ. 8083, 2010 WL 4983183, at *4 (S.D.N.Y. Dec. 6, 2010); Aristocrat Leisure Ltd. v. Duetsche Bank Trust Co. Americas, 727 F. Supp. 2d 256, 271 (S.D.N.Y. 2010) (collecting cases). Assertion of an advice of counsel defense is the "quintessential example" of an implied waiver. County of Erie, 546 F.3d at 228 (internal quotation marks and citation omitted). Similarly, a defendant asserting a good faith defense that implicates its state of mind may also waive the privilege. Id. at 228-29; see also Chen-Oster, 293 F.R.D. at 556 (collecting cases). On the other hand, the fact that a privileged communication may simply be relevant to a claim or defense is insufficient to effect forfeiture of the privilege. County of Erie, 546 F.3d at 229.

            ii.   Work Product Doctrine

The work product doctrine "shields from disclosure materials prepared 'in anticipation of litigation'" by a party or its representative. United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995) (quoting Fed R. Civ. P. 26(b)(3)). It is designed to

protect "mental impressions, conclusions, opinions or theories concerning the litigation." United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998). A document is prepared "in anticipation of litigation" if, "in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained because of the prospect of litigation." Id. at 1202 (internal quotation marks omitted).

   Though it is often asserted that the work product doctrine does not prevent disclosure of facts, see, e.g., 8 Charles A. Wright, et al., Federal Practice and Procedure § 2023 (3d ed. 2010) ("[T]he work product concept furnishe[s] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned."), it may protect from discovery notes taken by an attorney that reflect the results of an investigation undertaken in anticipation of litigation. See In re Grand Jury Subpoena dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007) (holding that "fact work product may encompass factual material, including the result of a factual investigation"); Chevron Corp. v. Donziger, No. 11 Civ. 691, 2013 WL 3294820, at *1 (S.D.N.Y. June 28, 2013) ("[The work product doctrine] rests in part on the premise that each party to a lawsuit should do its own work, including its own investigation of the facts, without intruding into and benefitting from the efforts of its adversary.").

The work product doctrine is not absolute, however, and can be overcome by a showing of substantial need for production of the subject materials and the inability to obtain equivalent information from other sources. See Adlman, 134 F.3d at 1197, 1204; In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation, 293 F.R.D. 568, 574 (S.D.N.Y. 2013).

2. Application

Before the issue of whether S&W is entitled to documents and communications that are otherwise protected by attorney-client privilege or work product doctrine even arises, the plaintiffs must support their claim that such information is "relevant to the defenses and counterclaims asserted by Augme." (Pl. Memo. at 3); Chen-Oster, 293 F.R.D. at 561 ("The burden of demonstrating relevance is on the party seeking discovery."). Here, the plaintiffs have not provided sufficient explanation of why communications or documents exchanged between Augme and its attorneys are relevant to the claims, counterclaim, or affirmative defenses that are still at issue in this case.

S&W claims that "Augme's assertion of privilege results from its filing of counterclaims for legal malpractice and breach of contract, as well as proposed amended counterclaims adding breach of implied covenant of good faith and fair dealing and breach of fiduciary duty, against S&W." (Plaintiff's Reply in Support of its Motion to Compel the Depositions of Richard Sybert and Tom Scott,

Attorneys for Augme Technologies, Inc., and for the Production of Documents under FRCP 37 ("Reply") at 3). After Judge Daniels' ruling, however, the only surviving counterclaim is for breach of contract, and contrary to S&W's interpretation, that counterclaim focuses on S&W's billing practices, not on any damages caused by S&W's representation that required correction by Goodwin Procter. (First Amended Affirmative Defenses and Counterclaims). Augme continues to assert an affirmative defense of dismissal for good cause based on S&W's "failure to obtain or understand the relevant evidence needed for the underlying cases, [] drafting of incomprehensible briefs to the Court, [] unprofessional demeanor during hearings, [] excessive billings, and [] mishandling of experts." (First Amended Affirmative Defenses, ¶ 2). But while this defense may raise some of the same malpractice-related issues as the dismissed counterclaim, it does not require proof of causation or damages that would implicate Goodwin Procter's corrective efforts.[2]

S&W nevertheless argues that the dismissal of the malpractice

---

[2] In its belated submission to the Court, S&W alleges that Augme has "inherently incorporate[d] the claims in the previously proposed pleadings" in its amended affirmative defenses and counterclaims. (Shaub 3/6/14 Letter). But the examples it cites pertain to the breach of contract counterclaim, the dismissal for good cause and breach of contract affirmative defenses, and other language discussing the billing agreement and arguing that S&W's work for Augme was ineffective or valueless. Again, S&W fails to establish how such language implicates privileged communications between Augme and its attorneys.

claim does not alter the need to compel discovery of attorney-client communications. Although S&W does not articulate clearly what privileged information it believes is relevant and discoverable, it focuses almost exclusively on disputes regarding the causation and damages elements of the (now dismissed) malpractice counterclaim. (Pl. Memo. at 5, 6-8, 19; Reply at 3, 6-7). For example, it argues that the proposed amended malpractice counterclaim (which Judge Daniels disallowed) "sheds light on the types of arguments Augme intends to make at trial" (Pl. Memo. at 6-8), that the privileged communications are "inextricably merged" with Augme's claims that "it incurred legal fees to Goodwin Proctor [sic] to fix S&W's mistakes" including reopening of discovery and an improperly hired expert, and that S&W now requires "billings or documents showing what work was performed to attempt to fix S&W's alleged mistakes" (Pl. Memo. at 18-19). None of this is relevant to the surviving breach of contract counterclaim, and S&W fails to identify any other privileged communications or work product material that would be relevant to Augme's remaining counterclaims or affirmative defenses.

In any event, even if S&W had established the relevance of the documents and communications they seek, they have not demonstrated that Augme waived the attorney-client privilege or that disclosure is merited despite work product protection. S&W relies heavily on comparisons between this case and <u>Bank Brussels Lambert v. Credit</u>

11

Lyonnais (Suisse), S.A., 210 F.R.D. 506 (S.D.N.Y. 2002), to support its claim that Augme has put the advice it received from Gordon & Rees and Goodwin Procter at issue. (Pl. Memo. at 12-16; Reply at 2-3). Contrary to S&W's assertion, however, Bank Brussels is not "almost completely aligned with this current motion-related facts [sic]." (Pl. Memo. at 12). In addition to pre-dating the Second Circuit's explanation of the reliance requirement in County of Erie, Bank Brussels is clearly distinguishable from this case. It involved a "malpractice action[] against a law firm, where its representation of the client overlaps and is simultaneous to another firm's representation of that client in the same matter." Bank Brussels Lambert, 210 F.R.D. at 511. Additionally, the plaintiff in that case relied on its in-house counsel and current outside counsel to interpret the work done by its former counsel (the defendant), all of whom were providing legal analyses and advice to the plaintiff at the same time. Id. at 510. Here, however, S&W did not substantially overlap or collaborate with Goodwin Procter or Gordon & Rees. (First Amended Complaint, ¶¶ 24-25 (alleging that S&W transferred files to Goodwin Procter but that its "efforts to continue its requested coordination of efforts with Goodwin Procter [sic], and to assist with the litigation going forward, were rejected by Goodwin Proctor [sic] and Augme" and that S&W was "basically shut out of the case"). And, as noted, there are no longer any malpractice claims against S&W.

Furthermore, while Augme's affirmative defense of dismissal for good cause alleges that S&W misunderstood the underlying litigation, S&W fails to show why it "needs to be provided the facts proving that S&W's alleged misunderstanding was wrong and the facts supporting the allegedly 'correct' understanding of the technology." (Reply at 6). To the extent that Goodwin Procter or Gordon & Rees provided analysis to Augme regarding what S&W did wrong and how to do it correctly, such information is protected by work product doctrine and S&W has not shown any substantial need for such information or evidence that it is unable to get it from a source other than communications between Augme and its attorneys.

Because S&W has not demonstrated that the sought-after communications are relevant, nor that they were relied upon as a basis for the remaining breach of contract counterclaim or remaining affirmative defenses, the motion to compel document production is denied.

### B. Deposition of Counsel

#### 1. Legal Standard

"[D]epositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case." United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co., Nos. 97 Civ. 6124, 98 Civ. 3099, 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000). Thus, although depositions of

opposing counsel are not forbidden, they are disfavored. In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 71-72 (2d Cir. 2003) (citing United States v. Yonkers Board of Education, 946 F.2d 180, 185 (2d Cir. 1991)); Gropper v. David Ellis Real Estate, L.P., No. 13 Civ. 2068, 2014 WL 904483, at *1 (S.D.N.Y. March 4, 2014); Lee v. Kucker & Bruh, LLP, No. 12 Civ. 4662, 2013 WL 680929, at *1 (S.D.N.Y. Feb. 25, 2013).

When determining whether to allow deposition of opposing counsel, the Second Circuit has directed district courts to "consider[] all of the relevant facts and circumstances" including "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." Friedman, 350 F.3d at 72; accord Gropper, 2014 WL 904483, at *2; Lee, 2013 WL 680929, at *2.

2. Application

Based on the factors discussed in Friedman, S&W fails to provide sufficient justification for deposing Augme's former and current counsel.

As with the motion to compel document production, S&W has not demonstrated the relevance of the information it seeks to obtain in the requested depositions in light of the dismissal of the malpractice counterclaim. S&W has not identified any relevant

14

knowledge that counsel from Goodwin Procter or Gordon & Rees would have about the issues that remain: S&W's billing practices and its performance in the underlying litigation.

The major impetus for S&W's request to depose Mr. Scott and Mr. Sybert seems to be the deposition testimony of Todd Wilson, Augme's Chairman of the Board. (Pl. Memo. at 2; Reply at 4). S&W alleges that Mr. Wilson displayed knowledge of "highly technical" aspects of the case and made "sweeping legal conclusions about [Goodwin Procter's] actions after S&W's withdrawal" but then invoked attorney-client privilege when asked whether and how he relied on the advice of Mr. Scott and Mr. Sybert in acquiring that knowledge. (Pl. Memo. at 2, 16-17; Reply at 4, 5, 8). However, Mr. Wilson's deposition testimony and his invocation of attorney-client privilege are largely irrelevant at this point.

S&W states that its deposition questions were intended to probe the contents of a declaration signed by Mr. Wilson, which Augme submitted in opposition to the summary judgment motion. (Pl. Memo. at 16). But that motion focused almost exclusively on the legal malpractice counterclaim and was dismissed as prematurely filed. Indeed, the bulk of S&W's questions during the deposition were focused on the opposition to the motion for summary judgment and the proposed first amended counterclaim, i.e., the malpractice counterclaim.

To the extent that Mr. Wilson's deposition touched on other

topics -- such as the elements of a patent infringement claim and his knowledge that S&W had negotiated the engagement of an expert witness in the underlying action (Pl. Memo. at 17) -- there is no indication that the privileged communications relaying this information are at issue. If S&W is attempting to ascertain the basis for Augme's claims and defenses, it can do so at the appropriate time by means of contention interrogatories.

As to the second factor, Augme's attorneys were not deeply involved in the substance of the issues remaining in this case. There is no indication that Mr. Sybert's involvement goes beyond discussing the underlying litigation with his client and preparing the pleadings. (Def. Memo. at 9). Mr. Scott, as an attorney at Goodwin Procter who represented Augme in the underlying litigation after S&W withdrew, was more involved and allegedly worked to correct S&W's mistakes. However, because the legal malpractice counterclaim has been dismissed and the focus is now on S&W's billing and whether Augme dismissed S&W for good cause, the only relevant actions are the ones taken by S&W, not Goodwin Procter. There is no indication that either attorney was involved in the formation of the retainer between S&W and Augme, nor that they participated in any crucial meetings or investigations or any other matters that would put them in the position of fact witnesses to the breach of contract counterclaim or the dismissal for good cause defense. On the other hand, Mr. Sybert is substantially involved

in the litigation of the current case, and Augme rightly notes that deposing him carries a risk of prejudice, as it would implicate the advocate-witness rule and could force his disqualification. (Def. Memo. at 8-9). This counsels against allowing the depositions.

Next, there is clearly a high risk of encountering attorney-client privilege and work-product issues; S&W is explicitly asking for such information.

Finally, the parties are presently negotiating a protective order for the disclosure of some discovery materials that may obviate what little remaining need there could be for the information sought from depositions of Augme's counsel.

S&W has failed to provide any compelling reason for the depositions of Mr. Scott and Mr. Sybert; in light of the potentially disruptive impact of deposing Augme's prior and current counsel, the motion to compel their depositions is denied.

Conclusion

For the reasons discussed, the plaintiff's motion to compel depositions of Mr. Sybert and Mr. Scott and to compel the production of documents (Docket no. 85) is denied.

SO ORDERED.

*/s/ James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       March 13, 2014

Copies mailed this date:

Cassandra M. Tam, Esq.
David R. Shaub, Esq.
Lisbeth B. Merrill, Esq.
Shaub & Williams LLP
12121 Wilshire Blvd.
Suite 205
Los Angeles, CA 90025

Richard P. Sybert, Esq.
Yuo-fong C. Amato, Esq.
Gordon & Rees LLP
101 West Broadway
Suite 2000
San Diego, CA 92101

Robert Modica, Jr., Esq.
Gordon & Rees LLP
90 Broad Street
23rd Floor
New York, NY 10004